MAYNARD, Atty. Gen., v. GRANITE STATE PROVIDENT ASS'N et al.

(Circuit Court of Appeals, Sixth Circuit. March 7, 1899.)

No. 540.

1. CONSTITUTIONAL LAW—PRIVILEGES AND IMMUNITIES—DISTRIBUTION OF AS-SETS OF INSOLVENT CORPORATIONS.

An amendment of the building association laws of Michigan (Pub. Acts 1895, No. 269, p. 580) imposes certain conditions on corporations organized in other states to entitle them to engage in business in the state. Section 27 provides that the authority of any such association may be revoked at any time, in which event the attorney general shall institute proceedings to wind up its business in the state, and that "stockholders and creditors in this state of such foreign corporation shall have a first lien on all assets in this state of such foreign corporation, and the business in this state of such foreign corporation shall be closed by such receiver, and its assets converted into money, to satisfy the claims of such stockholders and creditors." A mutual building association of another state, engaged in business in Michigan, became insolvent. Its authority in that state was revoked, and proceedings were brought by the attorney general under such statute. The only creditors in the state were shareholders, and it held certain mortgage assets covering property therein. Held that, as against shareholders who were residents and citizens of other states, the provision of the statute giving preference to citizens of Michigan in the distribution of assets therein was invalid, as in violation of section 2 of article 4 of the constitution of the United States, declaring that citizens of each state shall be entitled to all privileges and immunities of citizens in the several states.

2. FOREIGN BUILDING ASSOCIATIONS—PROTECTION OF LOCAL SHAREHOLDERS.

The requirements of such statute, so far as valid, are fulfilled where the association is being wound up by the courts in the state of its organization, by a decree in the Michigan suit requiring the receiver to turn over the proceeds of the Michigan assets when collected, less the cost of collection, to the general receiver, on his execution of a sufficient bond to secure to the Michigan shareholders their pro rata of the total assets.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

This is an appeal from a decree of the circuit court of the Eastern district of Michigan, denying the relief prayed by the attorney general of Michigan in a bill in equity filed by him in a Michigan state court against the Granite State Provident Association, a corporation of New Hampshire. The bill was removed from the state court to the court below on the ground of diverse citizenship. The object of the bill was to wind up the affairs and business of the defendant association in Michigan, under the provisions of the statute of Michigan, hereinafter set forth, on the ground that its license to do business in the state of Michigan had been duly revoked. The bill prayed for the appointment of a receiver, the collection of the Michigan assets, the distribution of the proceeds pro rata among the creditors and stockholders of the association resident in Michigan, and, after the payment of their claims in full, the turning over of the remainder of the assets to one David A. Taggart, the assignee of the insolvent defendant association, who had been appointed by the supreme court of New Hampshire under a statute of that state. Taggart, the New Hampshire assignee, appeared in the cause by petition averring that he had been appointed under the laws of New Hampshire to wind up the affairs of the association, which had been declared insolvent by the supreme court of New Hampshire; that, as such assignee, he had received from the officers of the association notes payable in New Hampshire due the association for money loaned and secured by mortgages on real estate in Michigan; that, by the direction of the supreme court of New Hampshire, he had turned over the notes and mortgages to the receiver of

the court below for collection, treating the suit below as one ancillary to the one winding up the association in New Hampshire. In his petition he prayed that the proceeds of the notes, when collected, less the expense of collection, might be turned over to him for distribution pro rata to all the creditors and the stockholders of the association, wherever resident, in accordance with the laws of New Hampshire and the by-laws of the association. The circuit court denied the prayer of the bill that the proceeds of the note and mortgages should be distributed, first, among the Michigan creditors and stockholders, but directed the receiver to collect them, and, after deducting a sufficient sum for the expense of collection, to turn the proceeds over to the New Hampshire association for a ratable distribution to all the shareholders of the association, taking a bond from the assignee conditioned upon the payment of the proper part of the proceeds of all the assets of the association to the Michigan creditors and shareholders.

The defendant the Granite State Provident Association was a corporation organized under the laws of New Hampshire in 1881. It had other powers under its charter, but the only one we are here concerned with was its power to carry on business as a building association on the mutual plan. For seven years prior to 1895 the defendant association did business as a building association in Michigan, without restriction by Michigan laws. In 1895, the legislature of Michigan amended the general building association law by adding several sections making it unlawful for any corporation organized under the laws of any other state to engage in the business of a building and loan association until it should comply with certain requirements of the act which included filing a copy of its act of incorporation, and paying a franchise fee. Section 27 of the amendment provided that "the secretary of state may at any time, for reasonable causes, with the concurrence of the attorney general, revoke the authority of any foreign corporation to do business in this state; and in such event the attorney general shall take proceedings to wind up the business of such foreign corporation in this state, and a receiver may be appointed for the assets of such foreign corporation in this state. Stockholders and creditors in this state of such foreign corporation shall have a first lien on all assets in this state of such foreign corporation, and the business in this state of such foreign corporation shall be closed by such receiver, and its assets converted into money, to satisfy the claims of such stockholders and creditors."

It appears from the agreed statement of facts that on September 3, 1895, the date when the association took out its license under the foregoing act, it had then issued 7,506 shares of stock, and it had then placed loans secured by mortgage upon Michigan real estate in the amount of $67,925; that, after the date of its license under the law of 1895, it issued 3,009 shares of stock to Michigan shareholders, and made further loans upon Michigan real estate amounting in the aggregate to $10,300. It further appears that it has no creditors in the state of Michigan except the stockholders, and that, if the notes now held by the receiver were to be applied upon the Michigan shares alone, it would pay them in full, and would leave a small surplus to be turned over to the New Hampshire assignee. If, however, the New Hampshire assignee is permitted to use the proceeds of the notes secured by mortgages on Michigan real estate in the ratable distribution to the stockholders of the association, wherever resident, there will be paid but about 50 per cent of the amount due upon the shares. By the by-laws of the association, adopted May 16, 1895, it was provided, among other things, that the treasurer should have the custody of all the securities and funds of the association, and that all certificates of shares, notes, bonds, or contracts for the payment of money, and all payments of money, should be payable at the home office of the association in the city of Manchester, and should be governed by the laws of New Hampshire. The notes which have been turned over by the assignee to the receiver were all made payable in New Hampshire. Upon this state of facts, the circuit court held—First, that the act of June 4, 1895, could not and did not affect the contract between the association and the holders of the 7,500 shares of its stock taken before the passage of the act, because otherwise it would impair the obligation of an existing contract in New Hampshire; (2) that the owners of the other 3,000 shares,

taken after the passage of the act, in subscribing to the contract of membership, which provides for a ratable distribution of assets, must be held to have waived by such subscription all right to the preference secured to them by the statute; (3) that the statute, in giving preference to stockholders, did not extend the privilege to shareholders or members of mutual associations who could not properly be described as stockholders; (4) that, if the term includes shareholders in mutual companies, then the Michigan assets are to be devoted to the payment to the Michigan shareholders of only "that amount which they have engaged to accept, viz. whatever dividend is justly and equitably due them upon the final settlement of the affairs of the company and the distribution of its assets upon the basis of the equality of said shareholders with other members of their class, in whatever state resident"; (5) that the notes and mortgages upon Michigan land securing them were made payable in New Hampshire, were held by the association there, and were not assets in Michigan, and that, therefore, there were no assets subject to the operation of the act of 1895; and, finally, (6) that the act of 1895 is invalid, under the constitution of Michigan (section 20, art. 4), which provides that "no law shall embrace more than one object, which will be expressed in its title."

The petition for removal filed jointly by the Granite State Provident Association and David A. Taggart, assignee, states: "That Fred A. Maynard, attorney general as aforesaid, was at the time said suit was instituted, and still is, a citizen of the state of Michigan, and his official residence is at Lansing, Ingham county, in said state, and that said suit was instituted in the Ingham county circuit court, such circuit being in the Eastern district of Michigan; that the said complainant files the said bill in the interest of the members of the Granite State Provident Association, who are residents and citizens of the state of Michigan, and who were members of said association, and residents and citizens of Michigan at the time of the filing of said bill of complaint; that these defendants, the Granite State Provident Association and David A. Taggart, were at the time said suit was commenced, and ever since have been, and now are, citizens of the state of New Hampshire, and residents of the state of New Hampshire, the said company being incorporated under the laws of the state of New Hampshire. (3) That the bill of complaint was filed to secure to the members of said association, as aforesaid, who were residents and citizens of the state of Michigan, a first claim and lien upon the assets of said association located in the state of Michigan, and a preference over members of said association, who are not residents or citizens of the state of Michigan." In the first paragraph of the answer of the two defendants they admit the truth of the first paragraph of said complainant's bill of complaint, "that Fred A. Maynard is the attorney general of the state of Michigan, and that he filed said bill of complaint in behalf of the shareholders of the Granite State Provident Association, living in the state of Michigan, and who are citizens of the said state of Michigan." By the eleventh averment of the answer the defendants admit "that loans of money had been made by said Granite State Provident Association to shareholders, who were residents and citizens of the state of Michigan, upon mortgages given upon property in the said state of Michigan, as security for such loans, to the amount of eighty thousand dollars and upward. But they allege that substantially all of said stock was sold to shareholders, and loans made to shareholders in the state of Michigan, prior to September 3, 1895; and they allege that said Michigan shareholders in said association have only the same interest in the assets of said association, wherever the same may be situated, as the other shareholders who are residents of other states of the Union. (12) And these defendants, further answering, admit in substance the thirteenth paragraph of said bill of complaint; that the shareholders of said association residing in the state of Michigan purchased shares, and made payment in good faith. And also these defendants allege that the shareholders of said association, residents of other states than that of Michigan, also purchased shares of stock in said association in good faith, and are entitled to the same protection upon their shares, from the proceeds that may be realized from the assets of said association, as the shareholders residing in the state of Michigan." In the fourteenth paragraph the defendants allege "that the

title of said assignee, under the order of the supreme court of the state of New Hampshire, was ample to enable and authorize him to enforce claims wherever and in whatever states they might exist, or have been contracted, so as to do full justice to not only the shareholders in the state of Michigan, but the shareholders of said association in any and every state of the Union." In the fifteenth paragraph the defendants deny "that the shareholders of said association, residents and citizens of the State of Michigan, are entitled to any more of the proceeds of said association, or any different amount, than shareholders of said association, residents and citizens of other states of the Union or other countries. They further deny that the shareholders of said association, residing in the state of Michigan, are entitled, as claimed by said bill of complaint, to the full payment of the amount that shall be found due them, if there shall be sufficient assets in the state of Michigan, before any of the proceeds of the assets in Michigan shall be turned over to the defendant, assignee, or can be applied upon the claims and obligations of the shareholders of other states of the Union." In the petition which Taggart filed in the court below for the transfer of the funds, he says: "Your petitioner further alleges and shows that the position taken by said complainant is unjust, inequitable, and ought not to be sustained by this court, and all moneys collected from Michigan securities, whether from notes and mortgages turned over to said receiver by your petitioner, or other assets in the state of Michigan, should be paid over by the Michigan receiver, less the cost of collecting, for the following reasons: (3) Because, as your petitioner is advised and believes, if the construction of said act placed upon it by said complainant is correct, then such act is in violation of both the federal constitution and the constitution of the state of Michigan, in this: that it impairs the obligation of contracts; that it discriminates between citizens of the state of Michigan and citizens of other states, and does not give to citizens of other states than Michigan, shareholders in said association, the privileges and immunities of citizens of the state of Michigan."

Birney Hoyt, for appellant.

Moses Taggart, for appellees.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge (after stating the facts as above). We think the decree of the circuit court must be affirmed on the authority of the decision of the supreme court of the United States in Blake v. McClung, 19 Sup. Ct. 165, announced December 12, 1898, Mr. Justice Harlan delivering the opinion. That was a writ of error to the supreme court of Tennessee from a decree entered in the latter court upon a creditors' bill exhibited against an insolvent foreign mining and manufacturing corporation authorized to do business under the laws of Tennessee in that state, and having assets therein. The writ of error was sued out by certain of the creditors, who were nonresidents of Tennessee and residents of other states, to reverse so much of the decree as accorded priority of payment out of the assets to creditors resident in Tennessee, in accordance with a statute of Tennessee, which, after providing that such foreign corporations should be subject to the same process for the collection of debts due from them as natural persons, enacted as follows:

"Nevertheless, creditors who may be residents of this state shall have a priority in the distribution of assets, or subjection of the same or any part thereof, to payment of debts over all simple contract creditors, being residents of any other country or countries."

Two of the plaintiffs in error, it appeared, were residents of Ohio, and did business in that state. In the intervening petitions of those

creditors, it was averred that the plaintiffs in the general creditors' bill, residents of Tennessee, claimed priority of right in the distribution of the assets of the insolvent corporation over other creditors of the corporation, "citizens of the United States, but not of the state of Tennessee." The plaintiffs in error attacked the validity of the Tennessee statute on the ground that it was in violation of the provision of the second section of article 4 of the constitution of the United States, declaring that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states. The court considered the preliminary objections—First, that, as the statute only referred to residents, there was no occasion to consider whether it was repugnant to the provision of the national constitution relating to citizens; and, secondly, that it did not sufficiently appear that the complaining plaintiffs in error were citizens of other states, so that they could raise the question. The court said that although the allegations might not be sufficient to show that the individual plaintiffs in error were citizens of Ohio, within the meaning of the statute regulating the jurisdiction of the circuit courts of the United States, they might be accepted as sufficient for that purpose in the present case, no question having been made in the state court that the individual plaintiffs in error were not citizens, but only residents of Ohio. Coming, then, to the other preliminary objection, the court said:

"Looking at the purpose and scope of the Tennessee statute, it is plain that the words 'residents of this state' refer to those whose residence in Tennessee was such as indicated that their permanent home or habitation was there, without any present intention of removing therefrom, and having the intention, when absent from that state, to return thereto; such residence as appertained to or inhered in citizenship. And the words, in the same statute, 'residents of any other country or countries,' refer to those whose respective habitations were not in Tennessee, but who were citizens, not simply residents, of some other state or country. It is impossible to believe that the statute was intended to apply to creditors of whom it could be said that they were only residents of other states, but not to creditors who were citizens of such states. The state did not intend to place creditors, citizens of other states, upon an equality with creditors, citizens of Tennessee, and to give priority only to Tennessee creditors over creditors who resided in, but were not citizens of, other states. The manifest purpose was to give to all Tennessee creditors priority over all creditors residing out of that state, whether the latter were citizens or only residents of some other state or country. Any other interpretation of the statute would defeat the object for which it was enacted."

After discussing the meaning of the words "privileges and immunities," and pointing out that citizens of other states might legally do business with a foreign corporation domesticated in the state of Tennessee, the court said:

"If a state should attempt by statute regulating the distribution of the property of insolvent individuals among their creditors, to give priority to the claims of such individual creditors as were citizens of that state over the claims of individual creditors, citizens of other states, such legislation would be repugnant to the constitution, upon the ground that it withheld from citizens of other states, as such, and because they were such, privileges granted to citizens of the state enacting it. Can a different principle apply, as between individual citizens of the several states, when the assets to be distributed are the assets of an insolvent, private corporation lawfully engaged in business and having the power to contract with citizens residing in states other

than the one in which it is located? It is an established rule of equity that, when a corporation becomes insolvent, it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors (Graham v. Railroad Co., 102 U. S. 148, 161), not simply of stockholders and creditors residing in a particular state, but all stockholders and creditors of whatever state they may be citizens. * * *' These principles obtain, no doubt, in Tennessee, and will be applied by its courts in all appropriate cases between citizens of that state, without making any distinction between them. Yet the courts of that state are forbidden by the statute in question to recognize the right in equity of citizens residing in other states to participate upon terms of equality with citizens of Tennessee in the distribution of the assets of an insolvent, foreign corporation lawfully doing business in that state. We hold such discrimination against citizens of other states to be repugnant to the second section of the fourth article of the constitution of the United States, although, generally speaking, the state has the power to prescribe the conditions upon which foreign corporations may enter its territory for purposes of business. Such a power cannot be exerted with the effect of defeating or imparting rights secured to citizens of the several states by the supreme law of the land. Indeed, all the powers possessed by a state must be exercised consistently with the privilege and immunities granted or protected by the constitution of the United States. * * * We adjudge that, when the general property and assets of a private corporation lawfully doing business in a state are in course of administration by the courts of such state, creditors who are citizens of other states are entitled, under the constitution of the United States, to stand upon the same plane with creditors of like class who are citizens of such state, and cannot be denied equality of right simply because they do not reside in that state, but are citizens residing in other states of the Union. The individual plaintiffs in error were entitled to contract with this British corporation lawfully doing business in Tennessee, and deemed and taken to be a corporation of that state; and no rule in the distribution of its assets among creditors could be applied to them as resident citizens of Ohio, and because they were not residents of Tennessee, that was not applied by the courts of Tennessee to creditors of like character who were citizens of Tennessee."

We think the case at bar is governed by the principles adjudicated in the case from which we have quoted. It appears quite as clearly from the record in this case that the nonresident shareholders of Tennessee are citizens of other states in the Union as it did in the Blake Case that the individual plaintiffs in error were citizens of Ohio. The expression "stockholders and creditors in this state," contained in the Michigan statute, must be given the same construction as the words "creditors resident of the state of Tennessee," in the Tennessee statute, were given by the supreme court, and for the same reasons. Indeed, it is not denied, but it is expressly claimed by counsel for the complainant, that it was the intention of the statute to give a preference to citizens of the state of Michigan over citizens of other states. The Blake Case concerns a discrimination between resident and nonresident creditors. The statute whose validity is at issue in the case at bar concerns not only creditors, but shareholders. We do not see, however, that this creates any sound distinction. The parties in interest here are really creditors of the association to which they belong. It is a mutual association with respect to which shareholders occupy the relation both of stockholders and creditors. But, even if it were not so, the principles announced by the supreme court in the Blake Case necessarily cover the case of stockholders as well as creditors. Any one in any state had the right to become a stockholder or shareholder in the defendant cor-

poration. There was no restriction attempted by the law of Michigan or the law of any other state upon the residence of stockholders. The equity of stockholders to share in the assets of the corporation when it is being wound up is junior to that of creditors, but it is none the less to be protected as a privilege and immunity under the constitution of the United States. Mr. Justice Harlan, in referring to the equitable principle that requires the assets of a corporation civilly dead to be administered as a trust fund, says that it is a trust fund for the benefit, not simply of stockholders and creditors residing in a particular state, but of all stockholders and creditors of whatever state they may be citizens. Nor is the present case within the exceptions and qualifications of the rule which the supreme court deemed it wise to state in the Blake Case. Mr. Justice Harlan said:

"It may be appropriate to observe that the objections to the statute of Tennessee do not necessarily embrace enactments that are found in some of the states requiring foreign insurance corporations, as a condition of their coming into the state for purposes of business, to deposit with the state treasurer funds sufficient to secure policy holders in its midst. Legislation of that character does not present any question of discrimination against citizens forbidden by the constitution. Insurance funds set apart in advance for the benefit of home policy holders of a foreign insurance company doing business in the state are a trust fund of a specific kind to be administered for the exclusive benefit of certain persons. Policy holders in other states know that those particular funds are segregated from the mass of property owned by the company, and that they cannot look to them, to the prejudice of those for whose special benefit they were deposited. The present case is not one of that kind. The statute of Tennessee did not make it a condition of the right of the British corporation to come into Tennessee for purposes of business that it should at the outset deposit with the state a fixed amount, to stand exclusively or primarily for the protection of its Tennessee creditors. It allowed that corporation, after complying with the terms of the statute, to conduct its business in Tennessee as it saw fit, and did not attempt to impose any restriction upon its making contracts with or incurring liabilities to citizens of other states. It permitted that corporation to contract with citizens of other states, and then, in effect, provided that all such contracts should be subject to the condition (in case the corporation became insolvent) that creditors residing in other states should stand aside, in the distribution by the Tennessee courts of the assets of the corporation, until creditors residing in Tennessee were fully paid,—not out of any funds or property specifically set aside as a trust fund, and at the outset put into the custody of the state, for the exclusive benefit, or for the benefit primarily, of Tennessee creditors, but out of whatever assets of any kind the corporation might have in that state when insolvency occurred. In other words, so far as Tennessee legislation is concerned, while this corporation could lawfully have contracted with citizens of other states, those citizens cannot share in its general assets upon terms of equality with citizens of that state. If such legislation does not deny to citizens of other states, in respect of matters growing out of the ordinary transactions of business, privileges that are accorded to it by citizens of Tennessee, it is difficult to perceive what legislation would effect that result."

So, in this case, had the legislation of Michigan provided that, as a condition of the defendant association's doing business in the state of Michigan, it should deposit a fund with the state treasurer or other state officer to be used for the security of resident stockholders or creditors of the state of Michigan, such a provision would not have been in violation of the fourth article of the federal constitution. Such, indeed, was the character of the legislation adjudged to be valid in the case of Lewis v. Association, 98 Wis. 203, 73 N. W.

793, where a foreign building association was required by the law of Wisconsin to deposit $100,000 of its security with the state treasurer in trust for the redemption of the obligation of the association to persons residing in Wisconsin; those obligations including the payment of shareholders in the building association.

We hold, therefore, that, in its operation against the other shareholders of the defendant association, residents and citizens of other states than Michigan, the section of the Michigan statute relied on is invalid, because it violates the second section of the fourth article of the constitution of the United States. We further hold that, in a case where the whole corporation is being wound up in the state of its incorporation, the collection of the Michigan assets by a Michigan receiver, and the direction to him to turn the same over to the New Hampshire assignee, less the cost of collection, on the latter's giving a sufficient bond to secure to Michigan shareholders their pro rata of the total assets, fulfills the requirements of the Michigan statute in so far as the same is valid. The decree of the circuit court is affirmed.