WILLIAM H. KELLY, Commissioner of Banking and Insurance of the State of New Jersey and The London Operating Company, v. W. V. KNOTT, as State Treasurer and Insurance Commissioner, and New Jersey Fidelity and Plate Glass Insurance Company.

The LONDON OPERATING Co. v. NEW JERSEY FIDELITY & PLATE GLASS INSURANCE Co., and W. V. KNOTT, as State Treasurer.

(Two Cases Consolidated.)

163 So. 64.

Opinion Filed June 24, 1935.

Petition for Rehearing Denied September 18, 1935.

*Herbert U. Feibelman,* for Appellant;

*Waller & Pepper, Evans, Mershon & Sawyer, Roland W. Granat, Sutton, Tillman & Reeves, Mabry, Reaves, Carlton & White, Giles J. Patterson, John W. Holland,* U. S. Attorney, and *Wm. H. Paisley,* Assistant U. S. Attorney, for Appellees.

DAVIS, J.—This cause originated in the Circuit Court through the filing of a bill of complaint to prevent certain securities of an alleged insolvent surety company deposited with the State Treasurer under Sections 6302-6303, C. G. L., 4339-4340 R. G. S., from being exhausted and depleted to satisfy the judgments of only a few of the insolvent's creditors at the expense of the many.

While the original cause was pending undisposed of in the court below the Florida Legislature enacted 16248, Acts 1933, Laws of Florida (Senate Bill No. 288, approved May 10, 1933). By that Act, Section 6303 C. G. L., 4340 R. G. S., was so amended as to provide that in cases of insolvency of any surety company having securities on deposit with the State Treasurer as provided by Section 6302 C. G. L., 4339 R. G. S., and Acts amendatory thereof, a court of chancery at the seat of government in Florida, upon a bill of complaint filed by any party in interest, should take charge of the securities so on deposit with the State Treasurer, together with any other assets of such surety company which may be marshaled in the State of Florida, for the purpose of directing a sale thereof and making a distribution of the sale of said securities proportionally (among all Florida creditors) who might make proof of their claims against the insolvent surety company.

The enactment of the statute was followed by the insti-

tution of a suit under it filed by The London Operating Company as complainant and naming the New Jersey Fidelity & Plate Glass Insurance Company and W. V. Knott, State Treasurer, as defendants. This bill prayed the appointment of a receiver to take charge of the $75,000.00 worth of securities on deposit with the State Treasurer by the New Jersey Fidelity & Plate Glass Company and that the names of Florida creditors having claims against the same be ascertained and appropriate distribution made to them of such assets as to their interests might appear. Subsequently D. M. Lowry was appointed receiver in the cause, and on May 25, 1933, pursuant to a motion to that effect, filed by William H. Kelly, Commissioner of banking and insurance of the State of New Jersey, the complainant in the suit originally begun by him on December 19, 1932, prior to the enactment of the 1933 liquidation statute, the first instituted suit of William H. Kelly, as Commissioner of banking and insurance of the State of New Jersey versus W. V. Knott, State Treasurer, and New Jersey Fidelity & Plate Glass Insurance Company was consolidated with the suit instituted on May 16, 1933, by The London Operating Company, as complainant, under the 1933 Act.

On October 27, 1934, the Chancellor entered an order recognizing and directing the payment of $28,476.28 in claims of Florida creditors that the Court adjudged to be payable out of the proceeds of the securities deposited with the State Treasurer by the New Jersey Fidelity and Plate Glass Insurance Company in accordance with Section 4339 R. G. S., *supra*. The claims thus allowed represented claims of Florida creditors founded on surety bonds, but which claims had not been reduced to judgment before the insolvency and liquidation proceedings had been instituted against the surety company at its domicile in the State of

New Jersey. By express provision in the court's decree, the question was reserved as to what should be done with the residue of funds remaining in the hands of the Receiver after payment of the $28,476.28 in claims so expressly allowed. The present appeal is by William H. Kelly, as Commissioner of Banking and Insurance of the State of New Jersey, the original complainant in the court below, who contends in support of his appeal, that the foregoing order of the Circuit Court should be reversed by this Court, because of an alleged superior right exhibited on his part, as domiciliary liquidator of the New Jersey Fidelity & Plate Glass Insurance Company in New Jersey, the State of its domicile, to have and receive from the State Treasurer, free from any and all claims of Florida citizens not holding judgments obtained prior to the inauguration of the domiciliary insolvency proceedings, whatever securities may remain out of the original deposit made with the State Treasurer by the New Jersey Fidelity & Plate Glass Insurance Company under Section 6302-6303 C. G. L., 4339-4340 R. G. S.

It appears from the record that New Jersey Fidelity and Plate Glass Insurance Company was a corporation chartered in 1868 under the corporation and insurance laws of the State of New Jersey; that it was taken over for liquidation in the state of its domicile on May 28, 1932; that such taking over was by the Commissioner of Banking and Insurance of the State of New Jersey and was by virtue of the New Jersey statutes annd without court action; that the taking over of said company for liquidation in the State of its domicile transpired long prior to the filing in Florida on December 19, 1932, of the New Jersey liquidator's original suit brought to conserve the company's Florida assets as hereinbefore related; that the Florida suit was filed by ap-

pellee William H. Kelly, as domiciliary liquidator, as an undertaking to judicially impound and conserve the securities that the New Jersey Fidelity & Plate Glass Insurance Company had previously placed on deposit with the State Treasurer under Sections 6302-3 C. G. L., *supra;* that such action was required for the protection of Florida creditors, because of the lack, at the time, of any statutory authority or method for their disposition or distribution, except in payment of judgments rendered against said New Jersey Fidelity & Plate Glass Insurance Company.

The laws of New Jersey, as established in the record, show that appellant is a statutory liquidator of the New Jersey Fidelity & Plate Glass Insurance Company, a New Jersey corporation, who, by virtue of such New Jersey statutes, and upon petition of the company itself filed thereunder, had taken charge of all the assets of the New Jersey company for the benefit of all creditors who had done business with said company, scattered in nearly every state in the Union, including creditors in Florida.

It is accordingly the contention of appellant that in determining the rights of the Florida creditors, whose claims have been ordered paid in full as directed in the Leon County Circuit Court's order of October 27, 1934, herein appealed from, that the Florida courts must look not only to Sections 6302-6303 C. G. L., 4339-4340 R. G. S., as they existed at the time of the New Jersey corporation's deposit of securities with the State Treasurer in order to entitle it to carry on its Florida business, but to the corporate charter of the New Jersey company, as well as to all statutes and prevailing laws of New Jersey relating to or providing for the company's liquidation, all of which it is contended were impliedly acceded to by Florida claimants when they dealt with the New Jersey Company, and are there-

fore to be followed and observed by the Florida courts in determining their creditors' rights against the domiciliary liquidator of the defunct New Jersey corporation.*

Since a decision of the controversy now before this Court must depend largely if not entirely upon the proper judicial construction required to be placed upon the Florida statutes governing the transaction of business of surety companies in the State of Florida, as they existed at the time of the insolvency of the New Jersey Fidelity & Plate Glass Insurance Company, it is appropriate that the history of such Florida statutes, as appear to be applicable to this case, be herein set forth in order that the statutory background of the present controversy may be more clearly understood by the bench and bar to whose perusal and attention this opinion may come.

In 1885 Chapter 3596, Acts of Florida, was enacted. The requirement of Section 4 of this Chapter was that the surety company be possessed of $500,000.00 capital or assets in specified securities, of which at least $100,000.00 shall be deposited with insurance commissioners, auditor, comptroller or chief financial officer of any state of the United States or of the state under whose laws such company is incorporated, for the benefit "of all obligees of such company."

Section 4 of Chapter 3596 appears in the Revised General Statutes of Florida of 1892 as Section 2230 thereof, but does not appear in the General Statutes of 1906 nor in the Revised General Statutes of 1920, nor in the Compiled General Laws of 1927, so that it appears that such section was re-

---

*Cited in support of this contention are: Relf v. Rundle, 103 U. S. 222, 26 L. Ed. 337; Mumma v. The Potomac Co., 8 Pet. (U. S.) 281, 8 L. Ed., 945; Bank of Augusta v. Earle, 13 Pet. (U. S.) 519, 10 L. Ed., 274.

pealed either by or about the time of the enactment of Chapter 4671, Acts of 1899.

Section 2 of Chapter 4671, Acts of 1899, as amended by Section 3 of Chapter 7867, Acts of 1919, and Section 4 of Chapter 12321, Acts of 1927, appears in the Compiled General Laws of 1927 as Section 6302 thereof, which is as follows:

"Companies herein described, chartered by this State, or other states or foreign governments, now doing business in this State, or hereafter doing business in this State, which offer or undertake to become surety upon any bonds, or surety contract, before being accepted as surety thereon, shall be required to deposit with the Treasurer of this State bonds of the United States, or bonds of any State of the United States, and which amount according to their market value to seventy-five thousand dollars which bonds shall be receipted for by the State Treasurer and held or deposited by him. And whenever such company ceases to do business in this State, and has settled up all claims against it, as hereinafter provided, and has been released from all the bonds upon which they have been taken as sureties said bonds shall be delivered up to the proper party on presentation of the Treasurer's receipt for said bonds. While said bonds are so deposited with the Treasurer, the owner of the same shall be entitled to collect the interest on the same. For the bonds so deposited, the faith of the State is pledged that they shall be returned to the party or parties entitled to receive the same."

Section 3 of said Chapter 4671, as amended by Section 5 of Chapter 12321, Acts of 1927, appears in the Compiled General Laws of 1927, as Section 6303 thereof, which is as follows:

"Whenever final judgment has been rendered against

any surety company on a fidelity or surety bond, said surety shall pay the same within thirty days. Upon notice of failure to pay said amount within said time, the State Treasurer shall retain said bonds, or so much thereof as may be necessary to cover said judgment and costs, subject to the order of the court trying any suit that may be brought upon such bond."

Section 6303 was amended by Chapter 16248, Acts of 1933, by the addition of a proviso prescribing the disposition of Florida assets of such surety companies and the securities deposited with the State Treasurer by them in accordance with the requirements of Section 6302 C. G. L. 1927, in the event of insolvency or liquidation of said companies.

Chapter 16247, Acts of 1933, provided for the giving of notice of the appointment of a receiver under Chapter 16248; and provided a limitation of time within which to file claims against such insurance, indemnity or surety companies in receivership.

Section 1 of Chapter 16248 is set forth in the 1934 supplement to the Compiled General Laws of 1927 as Section 6303 thereof, and Sections 1, 2 and 3 of Chapter 16247 are found in said Supplement as Sections 6303 (1) 6303 (2) and 6303 (3) thereof respectively.

So the primary questions to be decided in this case may be summarized as follows:

Whether or not deposits of securities made by a surety company with the Florida State Treasurer under the provisions of Section 6302 C. G. L., 4349 R. G. S., were required to be made and were made (1) for the sole benefit of *judgment* creditors only, when holding *judgments* obtained prior to the insolvency of the depositing surety company, and then only if predicated on claims arising out of surety bonds or surety contracts executed for the benefit

of Florida obligees, as contended by appellant, William H. Kelly, as Commissioner of banking and insurance of the State of New Jersey; (2) or for the sole benefit of Florida obligees in Florida surety bonds and surety contracts, whether their claims be reduced to judgment or not, as contended for by some of the appellees; or (3) as a special deposit by way of pledged security for the payment of *all* "claims" against a defaulting or insolvent surety company, whether such "claims" arise out of surety bonds or surety contracts or not, but with priority therein in favor of surety bond and surety contract holders, to the extent of creating a preferred claim in favor of first payment of judgment creditors obtaining judgments on Florida surety bonds and surety contracts, followed by a secondary preference in favor of obligees on Florida surety bonds and surety contracts entitling the latter to preferential payment in advance of other claims of a subordinate order, such as claims of Florida creditors in general.

We recognize, of course, the general rule that a state statute, discriminating, or undertaking to discriminate, against non-resident creditors of a foreign corporation permitted to transact business in the State of Florida, would be unavailing for such purpose, in view of those provisions of the Federal Constitution guaranteeing to citizens of each state the privileges and immunities of the citizens of the several states. Sully v. American Nat. Bank, 178 U. S. 289, 20 Sup. Ct. Rep. 935, 44 L. Ed. 1072; Blake v. McClung, 172 U. S. 239, 19 Sup. Ct. Rep. 165, 43 L. Ed. 432; 176 U. S. 59, 20 Sup. Ct. Rep. 307, 44 L. Ed. 371; Maynard v. Granite State Provident Ass'n, 92 Fed. 435; Clark v. Williard, 292, U. S. 112, 54 Sup. Ct. Rep. 615, 78 L. Ed. 1160.

But there is nothing in the Constitution of the United States or in the Constitution of Florida that prohibits the

State of Florida from requiring a foreign corporate surety company to make a special deposit with the State Treasurer to be held in trust for the benefit and security of Florida resident creditors, regardless of class or distinction between the same. Indeed, it seems to be the prevailing practice of every state in the Union wherein foreign corporations are permitted to carry on an insurance company or corporate surety business to definitely impose such a requirement as a condition precedent to their right to lawfully do business in states other than the state of their domicile, and such requirement has been uniformly upheld as a valid one. "It would * * * be a strange defect in the legislative power if * * * a state could not frame laws which would enable her to subject lands (assets) of a corporation whose charter had expired to the debts which it owed her citizens." McCoon v. Scales, 9 Wall. (U. S.) 23, 19 L. Ed. 545 (text 548). See also: Paul v. Virginia, 8 Wall. (U. S.) 168, 19 L. Ed. 357.

What then, was the purpose of the required statutory deposit of securities by the New Jersey Fidelity and Plate Glass Insurance Company, brought in controversy in this case, and to what extent does such deposit constitute a trust fund for the benefit of Florida creditors in case of the insolvency of such company, to the exclusion of all other claims?

We think that the correct answer to the foregoing question is to be found in the necessary meanings and intendments comprehended within the scope of the language of the statute under which the deposits of securities were required to be made. Section 4339 R. G. S., 6302 C. G. L. The Florida statute plainly requires that every such depositing surety company ceasing to do business in Florida, whether by voluntary withdrawal of its business from the state, or because of insolvency, must first settle up "all

*claims* against it, *in addition to* becoming discharged or released from outstanding surety bonds and surety contracts, in order to become entitled to demand and reclaim its deposited securities as having been discharged from the statutory trust created by the act of deposit in accordance with the Florida statute.

Such construction of the statute was indicated by this Court in an opinion filed in 1932 long prior to the enactment of Chapter 16248, Acts of 1933, which latter statute we hold to be merely declaratory of what was already the Florida law subject to which the deposited securities were put up to be held, subjected or distributed, as occasion might arise. See: State, *ex rel*. Union Indemnity Co. v. Knott, State Treasurer, 105 Fla. 569, 143 Sou. Rep. 221.* It was in effect followed in both the main opinion and in the concurring opinion of Mr. Justice BROWN in the subsequently decided case of Board of Public Instruction of Dade County v. Knott, State Treasurer, decided the same year and reported in 106 Fla. 869, 143 Sou. Rep. 735. Nor was such construction of the statute ignored or overruled in the later case of State, *ex rel*. Vetter, v. Knott, State Treasurer, 114 Fla. 95, 153 Sou. Rep. 606, wherein this Court was asked but refused to declare that the statute created a special trust for the benefit of judgment creditors which should be given effect by allowing judgment creditors to subject it to levies under execution at the instance of the judgment creditors,

---

*This case involved the rights of an assignee to withdraw deposited securities after a surety company had ceased to do business in the state but as to which an unsettled claim was pending. The holding was that the assignee's ownership and right of possession to the securities on deposit with the State Treasurer was subject to the pending unsettled and unliquidated claim being asserted against the depositing surety company, although it had not been reduced to judgment at the time.

regardless of the insolvency of the surety company, its pending liquidation as an insolvent foreign corporation under the laws of a sister state, or the enactment of Chapter 16248, Acts of 1933, setting forth a specific method of dealing with and disposing of such trust deposit for the benefit of Florida claimants.*

While the deposited securities of a solvent and going security concern still transacting business in Florida do constitute (as was held in the Vetter case, *supra*) a special security for the payment of judgments rendered against such surety companies in this state (Section 6303 C. G. L., 4340 R. G. S.), the fund represented by the deposited securities is also in the nature of fund held in trust for the benefit of domestic creditors of the depositing surety company, as a condition precedent to its right to transact a surety business in this State. This is so because the statute under which the deposit of such securities is required to be made, specifically conditions the right of the depositing company to withdraw the securities so deposited, not upon the payment or release of judgments on surety bond or surety contract claims alone, but upon the settlement of "all claims against it."

The phrase "as hereinafter provided," as used in amended Section 4339 R. G. S., *supra,* is only intelligible and capable of being given meaning when it is construed as if it read, "as herein provided." This apparently superfluous

---

*The holding of the decision was not that the deposited securities were not a trust fund, but that in order for a judgment creditor to subject it to satisfaction of his judgment by impressing the specific lien of his judgment thereon to the preference of other claimants entitled to participate in such fund, that the statutory method of procedure for such subjection to the execution and judgment lien would have to be followed prior to insolvency.

phrase should not be so construed as to destroy the obvious meaning, intent and purpose of the legislative requirement as it otherwise appears in the statute, both from the words and context of the section. See: State v. City of Miami, 100 Fla. 1388, 131 Sou. Rep. 143, where superfluous and meaningless language in a constitutional amendment was rejected under this rule.

· The deposited securities of New Jersey Fidelity and Plate Glass Insurance Company having been put up with the State Treasurer as a trust fund to be held by him for the protection and benefit of *all* Florida claimants entitled to seek satisfaction thereout, regardless of the continued solvency of the depositing corporation, or its voluntary cessation of business in the State of Florida, it follows that it was entirely competent for the Legislature of 1933 to enact Chapter 16248, Laws of Florida (Senate Bill 288), setting up a special chancery proceeding by which the trust could be enforced and discharged in the event of the depositor's insolvency—a contingency not theretofore provided for by way of any judicial method of distribution except under the general equitable powers of court of equity to protect and enforce trusts.

· It follows also that it was competent for the Legislature in and by said Act to adopt and provide for a method of investigation of claims as well as for distributing the trust fund, according to the object of its creation as already heretofore understood and declared by the laws of Florida pertaining to the rights of the depositing surety company reserved therein as against the terms and conditions of the stated trust, and that no vested or constitutional rights of appellant, William H. Kelly, as domiciliary receiver or liquidator of the surety company here involved, have been violated by such statute in its provisions, which simply

direct a course of distribution assented to by the surety company when it made its deposit under, and in accordance with, the requirements of the state law of Florida under which it sought and enjoyed its right to do business as a surety company in the State of Florida. See: People v. Granite State Provident Ass'n., 161 N. Y. 492, 55 N. E. Rep. 1053, affirming 41 App. Div. 257, 58 N. Y. S. 510; Maynard v. Granite State Provident Ass'n (CCA 6th U. S. Circuit), 92 Fed. 435; Phillips v. Perue, 111 Tex. 112, 229 S. W. Rep. 849; Lewis v. American Savings & Loan Ass'n, 98 Wis. 203, 73 N. W. Rep. 793, 39 L. R. A. 559; Clark v. Williard (second appeal), 294 U. S. 211, 55 Sup. Ct. Rep. 356, 79 L. Ed. ____ (decided February 4, 1935); 17 Fletcher Cyclopedia of Corporations, page 703.

The 1933 legislation clearly does not undertake to provide for any judicial seizure and distribution of the general assets of the New Jersey Fidelity and Plate Glass Insurance Company owned or found in Florida to Florida creditors in preference to other creditors, generally. It is therefore not violative of Section 2, Article IV of the U. S. Constitution as interpreted and construed in the case of Blake v. McClung, 172 U. S. 239, 19 Sup. Ct. Rep. 165, 43 L. Ed. 432, although it may, and possibly does, authorize any general assets of such insolvent corporation found in Florida to be brought within judicial control and conserved by the designated Florida court, until appropriate disposition thereof can be made as provided by applicable provisions of general law controlling the same.

Neither does Section 6302 C. G. L., 4339 R. G. S., Section 6303 C. G. L., 4340 R. G. S., or Chapter 16248, Acts of 1933, comprehend that claims or judgments recovered by the United States of America shall be within the purview of the trust purposes provided for by said sections. The Leg-

islature of Florida is presumed to have enacted its protective legislation for the benefit of Florida claims arising out of the corporation's transaction of business in Florida, and to have provided for the creation of this special trust fund deposit for their particular benefit.

In this case the United States asserts not only a right of participation in the security fund of New Jersey Fidelity & Plate Glass Insurance Company on deposit with the State Treasurer under Section 6302 C. G. L., 4339 R. G. S., but insists upon a priority of payment of its claims out of such fund by reason of Sections 191 and 192, Title 31, U. S. C. A.

We deem it a sufficient answer in denial of the claim of the United States on the first proposition, to point out that by its own Acts of Congress the United States has undertaken to prescribe special legislation of its own choice for its own special protection in the case of defaulted surety company bonds, as will appear by reference to Sections 1 to 11, inclusive, Title 6, U. S. Code Ann. It seems obvious, therefore, that in view of its own express legislation on the subject, the United States cannot rely upon the Florida statutes as conferring statutory benefits with reference to surety bonds executed in Florida running to the United States. The State of Florida was under no duty to legislate for the special protection of the National Government. And in view of the provisions of the Federal Government's specially provided statutory rights under Sections 191 and 192, Title 31, U. S. C. A., as against the general assets of the insolvent surety company enforceable against the general assets of the company in the hands of the domiciliary liquidator, or out of any residue of the special Florida deposits which may remain to be turned over to the domiciliary liquidator as general assets, after the satisfaction thereout of Florida claims, it would do violence

to the ordinary rules of statutory construction to now so construe the Florida Statutes as to make them inure to the special protection of the United States, as well as Florida creditors.

So the cross assignments of error filed by the United States on this appeal are overruled and the decision of the lower court as to the status of the claim interposed by the United States is approved as correct.

It follows that the order of October 27, A. D. 1934, herein appealed from should be modified to conform to the holding of this opinion and as so modified should be, and the same is hereby affirmed. The motion to dismiss the appeal herein is denied on the authority of Gover v. Mann, 114 Fla. 128, 153 Sou. Rep. 895.

Motion to dismiss appeal denied.

Order appealed from modified and affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.