Minnie F. Hyland, a widow, v. A. U. Rodney and I. Walter Hawkins, as Clerk of the Circuit Court of Volusia County.

195 So. 574
En Banc
Opinion Filed July 11, 1939
On Petition for Clarification of Opinion July 21, 1939
Rehearing Denied June 4, 1940

320

*P. W. Harvey,* for Appellant;

*Leon J. C. Harton,* for Appellees.

BUFORD, J.—Appeal brings for review order dissolving a temporary restraining order and dismissing bill of complaint in a suit instituted by a property owner to enjoin the issuance of a tax deed, application for which was made on Daytona Beach Tax Certificate No. 1373 issued February 5, 1934.

Complainant alleged in effect that she was the owner of the property described in the tax sale certificate and that the property constituted her homestead. She further alleged:

"That plaintiff on July 18, 1938, received through the United States mail a notice of application for tax deed wherein notice was given that A. U. Rodney had filed City of Daytona Beach tax certificate No. 1373 issued February 5, 1934, in the office of I. Walter Hawkins, Clerk of the Circuit Court of Volusia County, Florida, one of the defendants herein, and that said A. U. Rodney had made application for tax deed to issue to him on said tax sale certificate, in accordance with law, and that unless said tax sale certificate was redeemed according to law, a tax deed will issue thereon on August 1, 1938; that enclosed with said notice there was enclosed a letter from said I. Walter Hawkins to plaintiff wherein the total cost to redeem was stated to be $878.95, and the property described in said notice of application for tax deed and in said letter from said I. Walter Hawkins was described as being in Volusia County, Florida, to-wit: Lot 3, Blk. 51, Daytona, all of which matters and things are particularly set forth in said notice of application for tax deed and said letter from said

I. Walter Hawkins, which are hereto attached marked 'Plaintiff's Exhibit A' and by reference made a part hereof,

"IV

"That the City of Daytona Beach, a municipal corporation, situated in Volusia County, Florida, claims to have sold the property described in said notice of application for tax deed on the 5th day of February, 1934, for the unpaid taxes thereon for the year 1933, which said certificate was issued to the Treasurer of the City of Daytona Beach, Florida, on February 5, 1934, for $358.21; that on June 27, 1938, said City of Daytona Beach by L. A. Coleman, its City Treasurer, sold the same and transferred to Atlantic Municipal Corporation, for value received, the said certificate No. 1373; that there appears to have been recorded on June 27, 1938, in the office of the Clerk of the Circuit Court of Volusia County, Florida, a purported assignment of said tax certificate on June 24, 1938, by and under the seal of said Atlantic Municipal Corporation, to one A. U. Rodney, for value received, all of which matters and things will more fully appear from a certified copy of said tax sale certificate No. 1373 and assignments thereof, which is hereto attached marked 'Plaintiff's Exhibit B' and by reference made a part hereof.

"V

"Plaintiff charges that the purported sale of said tax certificate to said Atlantic Municipal Corporation was for a sum of money much less in amount than due thereon for principal and interest as provided in Chapter 10466, Laws of Florida 1935; and Acts amendatory thereto; that plaintiff received no notice of the purported sale of said certificate, or assignment thereof; that plaintiff is entitled to redeem said certificate for the amount paid for same by said Atlantic Municipal Corporation, and the said A. U. Rodney

is employed or is an officer of the said Atlantic Municipal Corporation and has actual notice of what sum, if any, was paid said City of Daytona Beach for said certificate; that under the laws of the State of Florida plaintiff is entitled to redeem said certificate for the sum paid said City of Daytona Beach by said Atlantic Municipal Corporation with interest at the rate of 8% from the time of the assignment of said certificate by said City of  Daytona Beach.

"VI

"That said City of Daytona Beach claims to have sold the property described in said notice of application for tax deed on March 7, 1938, for the unpaid taxes thereon for the year 1934, which said certificate was issued to Atlantic Municipal Corporation on March 7, 1938; that there appears to have been recorded on June 27, 1938, in the office of the Clerk of the Circuit Court of Volusia County, Florida, a purported assignment of said tax certificate on June 24, 1938, by and under the seal of said Atlantic Municipal Corporation, to one A. U. Rodney, for value received, all of which matters and things will more fully appear from a certified copy of said tax sale certificate No. 494 and assignments thereof, which is hereto attached marked 'Plaintiff's Exhibit C' and by reference made a part hereof.

"VII

"That said certificate No. 494 under the provisions of the laws of the State of Florida, Chapter 10466, Laws of Florida 1935, and Acts amendatory thereto (known as the City Charter of Daytona Beach, Florida), provides that the redemption period of tax sale certificates issued by said City of Daytona Beach shall be four years from the date of such certificates; that said certificate No. 494 bears interest at the rate of 12% for the first year after its date, and plain-

tiff should be permitted to redeem said certificate for the face amount thereof with interest from March 7, 1938, at 12% per annum."

She then avers that she is entitled to redeem certificate No. 1373 for the amount of $358.21 which she alleges is the amount paid for the certificate, together with interest thereon at 12% for the first year and 8% thereafter from February 5, 1934, and that the defendant is not entitled to a tax deed on amount claimed to be due based in whole or in part on the amount due on certificate No. 494.

A temporary restraining order was granted.

Decree *pro confesso* was entered and thereafter the order appealed from was made and entered.

The appellant presents four questions for our consideration, as follows:

1. "Where special law provides four year redemption period on each City of Daytona Beach tax certificate sold which described homestead property, can holder of a certificate sold March 7, 1938, force homestead property owner to redeem such certificate by applying for a tax deed to issue August 1, 1938, on a tax certificate more than four years old and including in the application the certificate dated March 7, 1938?"

2. "Can Clerk of the Circuit Court issue a tax deed on August 1, 1938, to homestead property in Daytona Beach upon an application based in part on a city tax certificate dated March 7, 1938, when applicable special law provides a four year redemption period from date of a city tax certificate for redemption by homestead owner?"

3. "Where decree *pro confesso* is regularly entered against defendants for failure of defendants to appear, can Court lawfully proceed thereafter with a hearing on a motion to dismiss the bill of complaint and/or a motion to

dissolve a temporary injunction without first vacating the decree *pro confesso?"*

4. "Where bill of complaint alleges a tax certificate was assigned by the City of Daytona Beach for face amount after the period of redemption provided by law, and a Court of Equity enjoins the issuance of such tax deed because it is based in part on said certificate and in part on a tax certificate the redemption period of which has not expired, and both certificates describe the same homestead property, will the Court order an accounting and permit homestead property owner to redeem the first mentioned certificate for face amount and interest accrued from date of purchase?"

First, let it be understood that this is not a suit to foreclose a tax lien but it is a suit to enjoin the issuance of a tax deed on tax certificates duly issued because of the nonpayment of legally assessed taxes at and when the same were due and payable.

The appellant relies on the provisions of Section 1 of Chapter 16390, Special Acts of 1933, which reads as follows:

"Every taxpayer in the City of Daytona Beach, Volusia County, Florida, whose property may be sold for the nonpayment of taxes to the City of Daytona Beach, and certificate therefor issued as provided for under the provisions of the charter of the City of Daytona Beach, which is Chapter 10466 of the Special Acts of the Legislature of the State of Florida for the year 1925, and amendments thereto, shall have two (2) years from the date of said certificate to make payment of the taxes due the said City, together with interest on the principal amount thereof at the rate of twelve per cent (12%) per annum for the first year and eight per cent (8%) thereafter, and the lawful costs accrued in connection therewith, during which period of two

(2) years no foreclosure proceedings may be instituted, based upon any such tax certificate; provided, however, that the two (2) year period for redemption shall apply only to property not used and occupied as a homestead. For all property owned and occupied by the head of a family and constituting a homestead under the laws of the State of Florida, against which certificate for the non-payment of taxes may be issued under the provisions of the charter of the City of Daytona Beach, and amendments thereto, there shall be a period of four (4) years from the date of such certificates before foreclosure proceedings can be instituted upon any such tax certificate."

The allegations of the bill of complaint show that tax certificate No. 1373 was issued more than four years prior to the application for tax deed and it also shows that tax certificate was issued for the non-payment of taxes on the same lands in 1938 and that that certificate has been assigned to the holder of the original certificate.

Section 185 of Chapter 10466, Special Acts of 1925, being the Charter Act of Daytona Beach, provides as follows:

"Sec. 185. General Laws to Apply.—All general laws of the State applicable to municipal corporation, now or which may hereafter be enacted, and which are not in conflict with the provisions of this charter or with the ordinances and resolutions hereafter enacted by the City Commission, shall be applicable to this City; provided, however, that nothing contained in this charter shall be construed as limiting the power of the City Commission to enact any ordinance or resolution not in conflict with the Constitution of the State or with the express provisions of this charter."

Section 764, R. G. S., 979 C. G. L., provides as follows:

"Procedure by incorporated cities and towns.—The tax collector of any city or incorporated town shall unless other-

wise provided in this Chapter, proceed substantially in the same manner in the collection of taxes and sale of lands and personal property for non-payment of taxes due by any railroad or any telegraph company; they may levy upon and sell any property within the corporate limits of said city or town belonging to such company, other than railroad tracks or telegraph lines.

"Nothing in this chapter shall be so construed as in any way abridging or limiting powers to assess, levy or collect taxes, licenses or assessments which have been or may be granted to any municipal corporation by special Act or charter Act, or as limiting such municipal corporation in the method of assessing, levying or collecting the same, to the methods established by this Chapter."

Section 792 R. G. S., 1018 C. G. L., provides as follows:

"Clerk of Circuit Court to make deeds to land sold by cities or town for taxes.—The Clerk of the Circuit Court shall make the deed for all lands sold for non-payment of taxes by any city or town, and not redeemed, substantially in the same form as provided in the sale of lands for county or state taxes."

Section 1 of Chapter 17457, Acts of 1935, provides:

"Section 1. Tax deeds on real estate sold for non-payment of taxes thereon may be obtained only in the following manner; the holder of any Tax Certificate may at any time after two years has elapsed since the issuance of such Tax Certificate file such Tax Certificate with the Clerk of the Circuit Court of the County in which the lands described in such Tax Certificate are located, notifying the Clerk that he desires the lands described therein, or any part thereof capable of being readily separated from the whole, advertised for sale.

"The certificate holder shall pay to the Clerk the proper amount fixed by law for the redemption or purchase of all other outstanding tax certificates covering said lands, a fee of fifty cents for each certificate then redeemed or purchased, and for searches ascertaining the outstanding certificates a fee of fifty cents for the oldest tax sale and a fee of fifteen cents for each subsequent tax sale, or subsequent omitted tax year, and a fee of two dollars for conducting the sale hereinafter provided for and the issuance of a tax deed. Where the tax deed contains more than one described parcel of land, an additional fee of ten cents for each additional description of property shall be paid."

Section 7 of that Act provides:

"Section 7. All lands advertised for sale to the highest bidder shall be sold at public auction by the Clerk of the Circuit Court of the county wherein such lands are located, and such sale shall be held only on the first Monday in each month, and during the legal hours of sale, and such sales shall be held at the courthouse door. At such time and place the Clerk shall read the notice of sale, and shall offer the property described in such notice for sale to the highest bidder for cash at public outcry. The amount required to redeem the tax certificate, plus the amounts paid by the holder thereof to the Clerk of the Circuit Court in fees, costs of sale, redemption of other tax certificates on the same property, in short, all costs which the applicant for tax deed has been put to, plus interest thereon at the rate of eight per centum per annum for one month, shall be considered the bid of the certificate holder for the property, and if there be no higher bids, the property shall be struck off and sold to such certificate holder, whether he be present or not. If there be other bids, the certificate holder shall have the right to bid as others present may bid,

and the property shall be struck off and sold to the highest bidder."

It appears to us that these statutes answer each and every question submitted by the appellant and that the answer to each must be contrary to the appellant's contention. The holder of tax certificate No. 1373 which was more than four years old at the time of the application was required to pay subsequent and omitted taxes and to redeem other and outstanding tax certificates, and he acquired a lien on the property for the amount paid for the original tax certificate plus interest and costs and in addition thereto the amount paid to redeem the lands from all subsequent or omitted taxes and from the lien of any subsequent tax certificate; and the owner of the land, to redeem the same from sale and prevent the issuance of a tax deed, is required to pay all these items to the certificate holder. The holder of a certificate which has matured to that extent that a tax deed may be issued thereon is entitled under the law to redeem the land from the liens of subsequent taxes so that the purchaser of a tax deed under the provisions of the Acts of 1935 *supra,* may become invested with a new and independent title free and clear of all tax liens. If the appellant's contention were correct, then it would be possible for the land owner, under conditions like those existing in this case, to prevent the issuance of a tax deed which would pass a title free and clear of tax liens created and existing subsequent to the original matured certificate. This condition would destroy the value of matured tax certificates and would lead to a further breakdown in our tax structure.

There can be no difference in the legal principles to be applied to tax liens and certificates in cases where the certificate is required to be four years old before a tax deed can be obtained upon it and in cases where the certificate is

required to be only two years old. In either case, if one acquires the matured certificate he may then redeem the property described in that certificate from subsequent tax liens and enforce the lien for the full amount to which he is entitled under the original certificate together with all amounts, costs, interests, etc., which he is required to pay to effectuate a satisfaction of subsequent liens.

The appellee has contended here that the language used in Section 1 of Chapter 16390, *supra,* confines that section to cases in which property has been sold to the City of Daytona Beach for non-payment of taxes. We do not agree with this construction.

. The statute applies to all cases where property may be sold for the non-payment of taxes due to the City of Daytona Beach.

The statute refers to nonpayment of taxes to Daytona Beach and not to tax sales to Daytona Beach. ·

The contention of the appellant reflected in question 3, *supra,* is not tenable. First: This court has held that "notwithstanding the fact that a decree *pro confesso* has been entered in an equity cause, the defendant has the right to attack the sufficiency of the bill of complaint to sufficiently state a case against him warranting equitable relief." See Weathersby, *et al.,* v. Dekle, 102 Fla. 157, 136 Sou. 708; B. L. E. Realty Corp. v. Mary Williams Co., 101 Fla. 254, 134 Sou. 47; Builders Supply Co. v. Acton, 56 Fla. 756, 47 Sou. 822. But aside from this, the record shows that the decree *pro confesso* was prematurely entered by the Clerk and was, therefore, ineffectual to cut off the interposing of defense by defendant.

It, therefore, follows that while Rodney could only require the owner Hyland to reimburse him for the amount paid for certificate No. 1373 with the interest provided by statute on that amount to redeem that certificate, see Lang

v. Quaker Realty Corp., 131 Fla. 179, So. ·144, he is entitled also *to be reimbursed to the extent of the amount which he paid to the taxing authorities for taxes levied and assessed subsequent to the assessment on which certificate No. 1373 was based.*

The complainant in the court below sought an injunction prohibiting the issuance of a tax deed upon contdition that she only pay the amount which the certificate holder paid for the certificate No. 1373 with interest thereon and she did not offer to pay or to repay or reimburse Rodney to the extent of the amount which he had paid to clear the lands of tax liens created by the levies and assessments subsequent to the assessment upon which the certificate, *supra,* was issued. This she must do before equity will enjoin the issuance of the tax deed.

For the reasons stated, the order appealed from should be and is affirmed, but without prejudice to appellant to amend.

So ordered.

TERRELL, C. J., and WHITFIELD, BROWN and THOMAS, J. J., concur.

CHAPMAN, J., dissents.

CHAPMAN, J. (dissenting).—The record in this case shows that Mrs. Minnie F. Hyland, plaintiff below and appellant here, was a widow and the head of a family and owned Lot 3 of Block 51, Mason and Coleman's Addition to Daytona, Florida. On said land was a small hotel known in the Daytona Beach community as the "Hyland House," and the sole source of her livelihood was obtained from the operation of this small hotel.

She was unable to pay the taxes assessed against her home and hotel by the City of Daytona Beach prior to the year 1934, and on the 5th day of February, 1934, the City

of Daytona Beach for the sum of $358.21 sold and transferred certificate No. 1373 to the Atlantic Municipal Corporation, and was by the latter transferred and assigned to A. U. Rodney, who in turn made application to the Hon. I. Walter Hawkins, Clerk of the Circuit Court of Volusia County, Florida, for a tax deed on the homestead of the widow. Likewise tax certificate No. 494 on the same property was issued by the City of Daytona Beach to A. U. Rodney for the sum of $347.38 on the 7th day of March, 1938, for the unpaid city taxes for the year 1934.

On July 26, 1938, the lower court, on a sworn bill of complaint filed by the plaintiff below, entered an order restraining the Clerk of the Circuit Court from issuing a tax deed to the homestead on certificates numbered 1373, dated February 5, 1934, and 494, dated March 7, 1938. On January 11th, 1939, the lower court entered an order sustaining a motion to dissolve the restraining order previously issued and in the same order dismissed the bill of complaint. From this order an appeal has been perfected to this Court.

Chapter 10466, Special Acts of 1925, Laws of Florida, is the charter of the City of Daytona Beach and was amended by Chapter 16390, Special Acts of 1933, Laws of Florida. While Section 1 of Chapter 16390 provides that no foreclosure proceedings may be based on a tax certificate issued by the City of Daytona Beach within two years after date of issuance, the owner of property is granted two years from date of issuance of the tax certificate in which to redeem property situated within the corporate limits of the City of Daytona Beach *not* used and occupied as a homestead. Four years from date of issuance of a tax certificate by the City of Daytona Beach is allowed in which to redeem or pay certificates on property used as a homestead and during this four-year period no foreclosure proceedings can be instituted thereon. Section 2 of Chapter

16390, *supra,* permits and allows installment payments on tax certificates on property during the two and four-year periods. The prayer of the bill of complaint sought (a) an accounting as to payments made by plaintiffs to the City of Daytona Beach during the four-year period provided in Chapter 16390, *supra;* and (b) that the four-year period of redemption as to certificate No. 494 began to run on the date of the issuance thereof by the City of Daytona Beach, viz., March 7, 1938.

The allegations appearing in the bill of complaint, and being the basis of the prayer thereof, are each admitted to be true on the motion to dismiss. If a bill contains equity, a motion to dismiss should not be granted. It is the law of Florida that a motion to dismiss is equivalent to a general demurrer and admits all allegations of the bill well pleaded. See Hartford Fire Ins. Co. v. Brown, 119 Fla. 610, 160 So. 657; Yates v. St. John's Beach Development Co., 118 Fla. 788, 160 So. 197; Pohl Beauty School v. City of Miami, 118 Fla. 664, 159 So. 789.

This Court is committed to the rule that the issuance continuance or the dissolution of an injunction is addressed largely to the sound judicial discretion of the court to be governed by the circumstances of each case. See Godwin v. Phifer, 51 Fla. 441, 41 So. 597. The holder of the municipal tax certificate herein is not as a matter of law entitled to recover of and from the property owner a sum of money greater than by him paid for the said certificates, with interest. See Lang v. Quaker Realty Corp., 131 Fla. 179, 179 So. 144.

The bill of complaint contains equity and it was error on the part of the lower court to grant the motion to dismiss the bill of complaint.

The order appealed from dismissing the bill of complaint is hereby reversed.

### On Petition for Clarification of Opinion

Per Curiam.—In this case appellee has filed petition asking that we clarify our opinion filed herein on July 11, 1939, by more clearly stating what is meant in that opinion by the language: "It, therefore, follows that while Rodney could only require the owner, Hyland, to reimburse him for the amount paid for certificate No. 1373, with interest provided by statute on that amount to redeem that certificate (see Land v. Quaker Realty Corp., 131 Fla. 179, 179 Sou. 144), he is entitled also to be reimbursed to the extent of the amount which he paid to the taxing authorities for taxes levied and assessed subsequent to the assessment on which certificate No. 1373 was based."

Reference to the Lang case cited, upon authority of which the enunciation above rests, discloses that the reference "interest provided by statute on that amount" does not mean the interest provided by statute by way of penalties on delinquent tax sale certificates, but means the legal rate of interest which under our present statute, in the absence of contract fixing the amount of interest, is 8% per annum. This is what was meant in the Lang case and in other cases where the holder of a delinquent tax sale certificate must, to foreclose the lien evidenced by such certificate, invoke the inherent jurisdiction of courts of chancery for that purpose.

So our opinion, *supra,* is clarified, if clarification be necessary, to this extent.

Terrell, C. J., and Buford and Thomas, J. J., concur.

Whitfield, J., concurs in opinion and judgment.

Justices Brown and Chapman not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.