70 So.2d 911 (1954)
BOHLINGER
v.
HIGGINBOTHAM et al.
Supreme Court of Florida. Division A.
March 12, 1954.
*912 Irvin Waldman, New York City, and Meginniss, Thompson & Morrison and B.A. Meginniss, Tallahassee, for appellant.
William A. Carter and Stockton, Ulmer & Murchison, Jacksonville, for appellees.
Ausley, Collins & Ausley and Truett & Truett, Tallahassee, for intervenor.
*913 SEBRING, Justice.
Prior to April, 1951, The Preferred Accident Insurance Company of New York, a foreign corporation, had been licensed to carry on its insurance business in the State of Florida. Since, among other types of insurance, it had been authorized to insure against the risk of loss by fire, it had met the requirements of section 631.06, Florida Statutes, F.S.A., by making a special deposit of $20,000 in bonus in trust with the Florida Insurance Commissioner for the account of the Preferred. On April 30, 1951, the Preferred was placed in liquidation pursuant to an order of the Supreme Court of New York, its charter was forfeited and cancelled, and Alfred J. Bohlinger, as Superintendent of Insurance of the State of New York, was directed to take possession of and liquidate the corporation's assets.
Higginbotham Company, a copartnership, was the Florida general agent of Preferred up to the time said corporation was placed in liquidation. On September 10, 1951, Higginbotham Company commenced an action against the Florida Insurance Commissioner and Bohlinger for the purpose of enforcing a lien upon the Preferred's bonds on deposit with the Florida Insurance Commissioner, pursuant to section 631.09, Florida Statutes 1951, F.S.A.
In its complaint the partnership set forth its late agency; alleged that it was the assignee of obligations for return premiums and losses on policies of various types, including fire policies, issued by the defendant insurance company to citizens and residents of Florida; and that it had taken assignments from the various policy holders of their rights under such policies, and consequently had a lien on the special deposit for reimbursement. The partnership prayed that evidence be taken to ascertain the amount of the lien and that said special deposit be brought into court for distribution. No personal service was effected on Bohlinger, service being accomplished by publication.
In due course the Florida Insurance Commissioner filed an answer in which, among other things, he alleged that the special deposit made by the Preferred was being held by him under section 631.06, Florida Statutes 1951, F.S.A., "for the exclusive and sole protection of policy holders of said insurer who are citizens and residents of Florida or who hold policies issued upon property in this state, insuring * * * against loss by fire and only to the extent of such coverage * * * that neither the plaintiffs nor any policy holder in Florida holding contracts of insurance * * * for coverage other than said loss by fire have any lien against said deposit for losses or return premiums paid or allowed and due. * * *" (Emphasis supplied.) On October 2, 1951, a motion to strike a portion of the answer was filed by the plaintiff; and on October 30, 1951, the Irby Company, a foreign corporation, filed a motion to intervene, tendering with its motion a complaint which differed from the complaint filed by Higginbotham Company only in the allegation that it was a foreign corporation and in the allegation as to the amount claimed by it. On November 7, 1951, a decree pro confesso was entered against Bohlinger for failure to plead; and on November 14, 1951, the Irby Company's motion for intervention was granted.
Subsequently a hearing was had upon the partnership's complaint; its motion to strike portions of the Florida Insurance Commissioner's answer; the Irby Company's intervening complaint, and a motion by the partnership (in which Irby Company joined) for the entry of a summary final decree. At the conclusion of the hearing an order was entered on January 3, 1952, adjudicating the following matters:
1. That Higginbotham Company and Irby Company "to the extent that they hold claims arising out of any policies of insurance issued by The Preferred Accident Insurance Company of New York to citizens of the State of Florida, have a lien upon" the special deposit in question.
2. That all such claims are equal in dignity except that losses by fire shall have priority, contrary to the Commissioner's assertion in his answer that only claims based *914 on fire losses should be permitted under the statute.
3. That by reason of his failure to plead within the time required by law the defendant Bohlinger be "forever barred and foreclosed of and from any and all right, title or interest in or to said bonds or the proceeds thereof except the right to receive any surplus" remaining after payment of claims.
4. That the Commissioner deliver said bonds forthwith to a special master appointed in the cause, who is directed to sell same and hold the funds pending an order of distribution by the court, and that he shall accept claims in a prescribed form, together with objections to same, and render a report to the court.
5. That the question as to attorney's fees be reserved for later decision.
On June 6, 1952, the special master filed his report and served a copy thereof upon the Insurance Department of the State of New York. Within 10 days thereafter Bohlinger filed written objections, in which he objected to the special master's report insofar as it recommended that the claim of Higginbotham Company and Irby Company be paid, and insofar as it recommended that attorneys' fees be allowed from the special deposit for the plaintiff and the intervenor.
The cause was brought on for final hearing before the trial court, on September 15, 1952, on the report and recommendations of the special master and the objections filed thereto by Bohlinger. At the hearing Bohlinger tendered to the court for filing and consideration a petition for leave to file further objections to the master's report, in which he averred, in substance, (1) that the court had no jurisdiction over the cause "which is not brought by a policy holder, as required by the statute, nor is the intervenor a policy holder, as so required;" (2) that the claim asserted by Higginbotham Company should be rejected in toto rather than in part; (3) that the subjection of the special deposit to the payment of claims other than those arising in connection with the Preferred's policies issued against the risk of loss by fire was in violation of law; and (4) that the recommendations of the special master operate to deprive him, Bohlinger, of his property without due process of law.
Subsequently, on March 6, 1953, the trial court rendered a final decree, which made the following adjudications:
1. It denied Bohlinger's petition to amend his objections, because the same was not timely filed under equity rule 65, 31 F.S.A.; and found, in the alternative, that there was no merit to the matters which Bohlinger wished to add to his objections, i.e. that (a) the court had no jurisdiction by reason of the cause not being instituted by a "policy holder" within the contemplation of section 631.09, and (b) that the payment of claims other than those based on loss by fire was in violation of the law.
2. It allowed and sustained Bohlinger's objections as to the propriety of that portion of the claims based on losses paid after the date of Preferred's adjudication of insolvency.
3. It approved the claims of the plaintiff, as assignee, and the claims of the intervenor, as subrogee, based upon unearned premiums, and certain losses and dishonored drafts paid by them.
4. It denied counsel fees to the partnership on the ground that the fund, as a trust fund, could not be subjected to the payment of such fees.
Bohlinger appealed from this decree, raising as the basic question for determination the propriety of the ruling by which the trial court denied his petition to amend his objections to the master's report.
In respect to this question, it appears to us that if the petition to amend the objections, filed at the time of the final hearing, had, in truth, squarely brought in issue the jurisdiction of the court over the cause, as Bohlinger contended, the court should have considered and ruled upon the merits of the issue. This is so for the reason that courts "are bound to take notice of the limits of their authority, and if want *915 of jurisdiction appears at any stage of the proceedings * * * the court should notice the defect and enter an appropriate order." West 132 Feet, etc., v. City of Orlando, 80 Fla. 233, 86 So. 197, 198; 21 C.J.S., Courts, §§ 108, 109. A close analysis of the amended objections proposed by Bohlinger shows, however, that the question of jurisdiction was not squarely tendered; indeed, it shows that the issues actually tendered were (1) whether section 631.09, Florida Statutes 1951, F.S.A., giving a right of action to "policy holders," could be invoked where, as shown by the complaints filed in this cause, the plaintiffs are not policy holders, but are assignees of policy holders; and (2) whether the statute is applicable to claims other than those for fire losses.
It is plain that, under the decisions of this Court, the questions actually raised by Bohlinger go not to the jurisdiction of the parties or the suit but merely to the sufficiency of the complaint on the merits. "Jurisdiction of the subject-matter of an action is a power to adjudge concerning the general question involved therein, and is not dependent upon the state of facts which may appear in a particular case or the ultimate existence of a good cause of action in the plaintiff therein." Quigley v. Cremin, 94 Fla. 104, 113 So. 892, 894; Malone v. Meres, 91 Fla. 709, 109 So. 677. This being the nature of the issue raised by the proffered amendments to objections, the ruling thereon rested in the discretion of the trial court. Smith v. Westcott, 34 Fla. 430, 16 So. 332; Mills Rock Co. v. Mills, 137 Fla. 607, 188 So. 210. And we find no abuse of discretion in the conclusion of the trial court "that defendant Bohlinger delayed too long to urge such position;  he urged it first after a year had elapsed from the filing of the complaint, after he himself had filed objections to the Master's report, after the lapse of ten days prescribed by equity rule 65, within which exceptions could be filed, after he had suffered on November 7, 1951, the entry of a decree pro confesso against him, and after the Special Master had executed the order of January 3, 1952, except for distribution of the fund."
But even if the actual issues tendered by the "Amendment to Objections" had been raised in a timely fashion, they would not have availed the defendant. The literal provision of section 631.09, Florida Statutes 1951, F.S.A., is that "the holders of all policies" (emphasis supplied) issued by the company locally are to have a lien on the deposit. Though under section 631.09 an insurance company is required to post a bond only if, like Preferred, its business includes the sale of fire insurance, the benefit of the security deposit is given to all Florida policy holders, and is not limited to claims for loss by fire. Compare Kelly v. Knott, 120 Fla. 580, 163 So. 64. In the absence of any restriction in the statute, the lien given thereby may, under the general rule, be assigned and enforced by the assignee to the same extent as by the policy holder in person. "Liens created by statutes [not based on common law, etc.] are generally assignable * * *. In the absence of a prescribed mode of assignment, an assignment of the claim for which such a lien is security usually will carry with it the right to the lien." 53 C.J.S. Liens, § 11, page 859.
In view of the conclusions reached on this question, it is not necessary for us to consider the point urged on cross-appeal by the Higginbotham Company as to the precise extent to which the entry of the decree pro confesso against Bohlinger and the order of January 3, 1952, referring the cause to a special master, limited Bohlinger's subsequent defense of the suit. But see Nail v. Browning, 77 Fla. 184, 81 So. 269; Hyland v. Rodney, 142 Fla. 319, 195 So. 574; Camp Phosphate Co. v. Anderson, 48 Fla. 226, 37 So. 722.
By an appropriate cross-assignment of error the Higginbotham Company has questioned the right of Irby Company to share in the fund in the hands of the special master. We have examined the record and authorities bearing on the subsidiary question raised by the Higginbotham Company as to the applicability of the doctrine of subrogation to the Irby Company claim, and have come to the conclusion that the position of *916 the trial court in this respect is well taken. United States Fidelity & Guaranty Co. v. Bennett, 96 Fla. 828, 119 So. 394. Compare Dodge v. Kistler, 140 Fla. 209, 191 So. 301; Goodwin v. Schmidt, 149 Fla. 85, 5 So.2d 64.
The final question posed on this appeal is whether the trial court "erred in failing to allow a reasonable attorneys' fee to [the Higginbotham Company] payable out of the fund in the hands of the Special Master for the services of [its] attorneys in bringing said fund into the jurisdiction of the Court."
In support of the contention that the attorneys' fee should have been allowed and paid out of the special deposit, it is first suggested that the authority for such allowance is to be found in section 625.08, Florida Statutes 1951, F.S.A., which reads as follows:
"Upon the rendition of a judgment or decree by any of the courts of this state against any insurer in favor of the beneficiary under any policy or contract of insurance executed by such insurer, there shall be adjudged or decreed against such insurer, and in favor of the beneficiary named in said policy or contract of insurance, a reasonable sum as fees or compensation for his attorneys * * *."
In our opinion section 625.08, supra, does not authorize the recovery of attorneys' fees in a case like the one at bar. It is applicable only to actions brought on an insurance policy against a going insurance company to recover a loss which such company wrongfully refuses to pay. Compare Industrial Insurance Co. v. First Nat. Bank of Miami, Fla., 57 So.2d 23; see also Feller v. Equitable Life Assurance Soc., Fla., 57 So.2d 581; Pendas v. Equitable Life Assurance Soc., 129 Fla. 253, 176 So. 104, 112 A.L.R. 1051. In the present case there has been no wrongful refusal by a going insurance company to pay to a beneficiary any amount due under a policy or contract of insurance. Indeed, the action is not against an insurance company at all, but is against the liquidator of the assets of a defunct insurance company and the Florida Insurance Commissioner to adjudicate rights in a statutory fund.
Secondly, it is contended that an attorney's fee for plaintiff's counsel should be recoverable out of the proceeds of the special deposit because the plaintiff has succeeded in bringing this fund into court for distribution to all claimants, and that therefore the court should allow the fee to the parties rendering the service.
We cannot agree with this contention. As appears from the record, the Higginbotham Company did not create a fund, because the fund was already in existence by virtue of the requirements of section 631.09, Florida Statutes 1951, F.S.A. The entire purpose of the Higginbotham Company in filing suit was to activate the distribution of a fund already in existence so that it could obtain the entire proceeds. In effect, the services rendered by the attorneys for the plaintiff in the liquidation proceeding were primarily in the interest of their client. Under such circumstances an attorney's fee was not recoverable from the assets of the defunct company on file with the Insurance Commissioner. See Commissioner of Insurance v. Massachusetts Accident Co., 318 Mass. 238, 61 N.E.2d 137; Bettman v. Northern Ins. Co. of Moscow, 134 Ohio St. 341, 16 N.E.2d 472. 7 C.J.S. Attorney and Client, § 193, p. 1097.
It follows from the conclusions reached that the decree appealed from should be affirmed.
It is so ordered.
ROBERTS, C.J., and TERRELL and MATHEWS, JJ., concur.