On the twenty-second day of August, 1924, the Honorable CHARLES AMBROSE DeCOURCY died at New London, New Hampshire. He held the office of an Associate Justice of this Court from the twentieth day of September, 1911, until the time of his death.

---

ROBERT McMURRAY & others *vs.* COMMONWEALTH.

Suffolk. March 4, 1924. — September 19, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, & CARROLL, JJ.

*Insurance Company,* Bond under G. L. c. 175, § 185, Insolvency, Receiver. *Receiver. Equity Jurisdiction,* To reach proceeds of bond filed by insurance company under G. L. c. 175, § 185.

The terms of the statutory trust described in G. L. c. 175, § 185, under which the Treasurer and Receiver General receives and holds deposits made by any domestic insurance company for the purpose of complying with the laws of another State to enable such company to do business in such State, do not restrict the disposition of the deposit, in the event of the insolvency of the insurance company, to the settlement of obligations due to policy holders or to creditors in the several States whose laws require such deposit as a prerequisite to the doing of business by the company within their respective jurisdictions: such trust cannot be said to have been fully performed until all obligations of the company to all policy holders and creditors have been settled in full and its business closed up on that footing, or, if that cannot be done, until all its assets have been distributed fairly and according to law among its policy holders and creditors.

The trust described and established by G. L. c. 175, § 185, is valid.

An insurance company, organized under the laws of this Commonwealth, in 1910, 1911, and 1915 deposited bonds of the par value of $301,000 with the Treasurer and Receiver General under the provisions of St. 1907, c. 576, § 99, (see now G. L. c. 175, § 185). Thereafter the company made contracts and undertook obligations in other States, and then became insolvent. The insurance commissioner brought a suit against the company in the Supreme Judicial Court, a receiver was appointed, and rules and orders were established in that suit for the proof of claims and the winding up of the affairs of the insurance company. Before the receiver had fully administered the affairs of the company, a creditor in another State brought, in the same court as that in which the receivership proceedings were pending, a suit in equity against the Commonwealth, seeking to have the trust of the property in the hands of the Treasurer and Receiver General administered for his benefit. Other creditors and the receiver were permitted to intervene. *Held*, that

(1) The statute did not provide, and the facts disclosed by the record did not require, that the Treasurer and Receiver General be removed as trustee and the receiver be substituted in his stead;

(2) The Treasurer and Receiver General ought not to be ordered to transfer the securities, held by him in trust, to the receiver;

(3) It would be an unnecessary duplication of labor and an unwarranted expense upon the policy holders and creditors to require that, for the purpose of ascertaining to whom distribution should be made, an inquiry and determination should be made both in the receivership proceedings and in this suit.

(4) A rescript was ordered directing that the case stand continued to a certain date to enable the entering of appropriate decrees in the receivership suit declaring those entitled to share in the assets of the insurance company as policy holders and creditors; that a copy of such decree when entered should be filed in this suit; that appropriate decrees then should be entered in this suit, authorizing and directing the Treasurer and Receiver General to convert into cash the securities held by him in trust and, after deducting his actual expenses, to distribute the proceeds among such policy holders and creditors in the proportions required by justice and equity, and for terminating the trust and discharging the Treasurer and Receiver General and the Commonwealth from further liability thereunder.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on November 5, 1923, against the Commonwealth by an employee of Hathaway Company, who had been awarded compensation under the workmen's compensation act to be paid by the New England Equitable Insurance Company, his employer's insurer, of which there still was due the sum of $3,557, the plaintiff seeking to have securities deposited by such insurer with the Treasurer and

Receiver General under " the provisions of G. L. c. 175, § 185," administered for the benefit of all creditors of the insurance company, including the plaintiff.

On December 28, 1923, the court granted leave to intervene to Galloway-Pease Company, and to Albert H. Wiggin, Gerhard M. Dahl, and Frederick Strauss, the purchasing committee under a plan of readjustment for the reorganization of New York Consolidated Railroad Company and New York Municipal Railway Corporation.

The petition of Galloway-Pease Company was based on a claim of Quercus Lumber Company against the New England Equitable Insurance Company on a policy of liability insurance, which claim had been assigned to Galloway-Pease Company, and the petitioner sought a decree that it was a creditor of the insurance company and was entitled to share in the trust fund which was the basis of the main suit.

The petition by Albert H. Wiggin and others was based upon bonds given to the New York Municipal Railway Corporation by two construction companies, upon which the New England Equitable Insurance Company was surety, and sought adjudication that the petitioners were creditors and an administration of the trust fund for their benefit.

On December 29, 1923, the court granted leave to intervene to Harry H. Ham, who alleged that he had been appointed receiver of the New England Equitable Insurance Company in a suit by the insurance commissioner against that company, entered in the Supreme Judicial Court for the county of Suffolk on January 24, 1922. He further alleged " that pursuant to rules and orders for winding up the affairs of the insurance company established by a decree of this court on September 9, 1918, in said case, in which he is now acting as receiver, various claims have been filed with him which have been proved aggregating $379,000, and that in addition certain other claims may be filed with him, which he is prepared to allow, amounting to $35,828.98, making a total of allowed and undisputed claims of $414,828.98. In addition to the aforesaid claims there are a large number of claims known to be in existence, some of which have been filed but not allowed, and some of which have not as yet been filed.

Your receiver has computed reserves against these last named claims aggregating $175,304.62. In addition the company has at the present time outstanding and in force contractual obligations aggregating six hundred and ninety-four in number and having a total penal sum of $4,344,360."

As to the securities which were the subject matter of the main bill in this suit, the receiver alleged: " The income derived from said securities has been paid over by the Treasurer and Receiver General from time to time as the same has accrued to your receiver. Demand has been made by your receiver upon the Treasurer and Receiver General that the latter should deliver to him the securities previously deposited by the insurance company, and the Treasurer and Receiver General has refused to comply with such demand."

The prayers of the receiver were in the alternative and in substance were either (1) that the Treasurer and Receiver General be required to deliver the securities which he held in trust under the statute to the receiver to be held and ultimately distributed by him pursuant to rules and orders entered or to be entered in the receivership suit; or (2) that such funds be required to be delivered to the receiver to be held by him in trust for the benefit of all creditors, the principal to be " subjected in no event to receivership expenses and to be held as a fund separate from other assets in the possession of the receiver, and to be distributed by him pursuant to rules and orders " entered or to be entered in the receivership suit; or (3) that the Treasurer and Receiver General be required to sell the securities held by him in trust and to distribute the same *pro rata* among such creditors as had duly proved their claims pursuant to the orders of the court entered or to be entered in the receivership suit, the term " creditor " as used in St. 1907, c. 576, § 99, to be construed as a creditor whose claim already had been allowed or might thereafter be allowed in the receivership suit; or (4) that the Treasurer and Receiver General be required to sell the securities held by him in trust, that the receiver be required to file with the Treasurer and Receiver General a list of all creditors whose claims had been proved and allowed in the receivership suit, and a list, so far as he

had knowledge, of all other persons who had claims against the company and of all persons who appeared as obligees in bonds outstanding and not cancelled or beneficially interested in such bonds or contracts with the company, that the Treasurer and Receiver General be ordered to send notice to all such persons and be required to pay a dividend to all creditors who shall have proved their claims with him and to all creditors whose claims had been allowed in the receivership suit on or before a date to be fixed by the court.

There was an agreed statement of facts. Material facts so agreed upon are described in the opinion. By order of *DeCourcy,* J., the suit was reserved upon the bill, answer, intervening petitions and agreed statement of facts for determination by the full court.

Section 99 of St. 1907, c. 576, now substantially embodied in G. L. c. 175, § 185, was as follows:

" The Treasurer and Receiver General in his official capacity shall take and hold in trust deposits made by any domestic insurance company for the purpose of complying with the laws of any other State to enable such company to do business in such State; and shall also in like manner take and hold any deposit made by a foreign insurance company under any law of this Commonwealth. The company making such deposit shall be entitled to the income thereof, and may from time to time with the consent of the Treasurer and Receiver General, when not forbidden by the law under which the deposit is made, change in whole or in part the securities which compose the deposit, for other approved securities of equal par value.

" Upon request of any domestic insurance company the Treasurer and Receiver General may return to such company the whole or any portion of the securities of such company held by him on deposit if he shall be satisfied that the securities so asked to be returned are subject to no liability and not required to be longer held by any provision of law or for the purpose of the original deposit. And he may return to the trustees or other representative authorized for that purpose of a foreign insurance company any deposit made by such company if it shall appear that such company has ceased to

do business in this Commonwealth and is under no obligation to policy holders or other persons in this Commonwealth or in the United States for whose benefit such deposit was made.

" An insurance company. which has made such deposit, or its trustees or resident manager in the United States, or the insurance commissioner, or any creditor of such company may at any time bring, in the Supreme Judicial Court for the County of Suffolk, a suit in equity against the Commonwealth and other parties properly joined therein to enforce, administer or terminate the trust created by such deposit. The process in such suit shall be served on the Treasurer and Receiver General, who shall appear and answer on behalf of the Commonwealth and perform such orders and decrees as the court may make thereon."

*E. M. Shanley*, for McMurray.

*H. H. Ham*, receiver of New England Equitable Insurance Co., *pro se*.

*W. A. Buie*, for Galloway-Pease Company, intervenor, submitted a brief.

*J. R. Benton*, Attorney General, & *R. Clapp*, Assistant Attorney General, for the Commonwealth, submitted a brief.

RUGG, C.J.    The New England Equitable Insurance Company (hereafter called the insurance company), organized as an insurance company under the laws of this Commonwealth, was engaged prior to 1917 in the business of insurance of various kinds in forty States and Territories. In 1917, information was filed against the insurance company under St. 1907, c. 576, § 8.    A receiver has been appointed.    The insurance company is in fact insolvent. " On September 9, 1918, a decree was issued by the Supreme Judicial Court, establishing rules and orders for winding up the affairs of the insurance company.    These rules established October 15, 1918, as the date as of which claims of creditors should be computed.    The last date set thereunder for filing claims was April 15, 1919, except that creditors whose claims were then in suit were to be allowed upon special petition to file late proofs of claim.    On December 23, 1919, the decree was modified by permitting the receiver to accept and allow claims by injured employees of persons

and firms insured by the insurance company under workmen's compensation policies, from time to time as they should accrue, and the receivers were authorized to pay, and did pay, by weekly instalments, to such employees claiming under workmen's compensation policies, 75% of their claims as they accrued until July 10, 1918." Allowed and undisputed claims aggregate $414,828.98. A large number of claims are known to be in existence, some of which have been filed but not allowed, and some of which have not been filed. A considerable number of surety and fiduciary bonds of the insurance company are still outstanding, the penal sums in which make a large total.

The insurance company, in 1910, 1911 and 1915, in order to do business in such States as made by law such requirement, deposited with the Treasurer and Receiver General bonds having a par value of $301,000, pursuant to the provisions of St. 1907, c. 576, § 99. See now G. L. c. 175, § 185.

The plaintiff has an established claim as an employee who has received an injury arising out of and in the course of his employment by an employer insured by the insurance company under the workmen's compensation act. A substantial sum remains due him from the insurance company. He brings this suit in equity against the Commonwealth to enforce payment of the balance due him out of the bonds so deposited with the Treasurer and Receiver General.

The receiver of the insurance company and two creditors of the insurance company resident in other States severally have been allowed to intervene. The case has been reserved for our determination on the bill, answer, the intervening petitions and an agreed statement of facts. The question for decision is of novel impression in this Commonwealth. That question is, what is the proper method of distribution of the deposit with the Treasurer and Receiver General where the insurance company is in fact insolvent and its affairs are being settled by a receiver appointed by the court?

The governing statute makes no specific provision for the disposition of the deposit with the Treasurer and Receiver General in the event which has occurred. It is enacted that " The Treasurer and Receiver General in his official capacity

shall take and hold in trust deposits made by any domestic insurance company for the purpose of complying with the laws of any other State to enable such company to do business in such State . . . ," and that the Supreme Judicial Court for Suffolk County shall have jurisdiction of a suit such as the one at bar " to enforce, administer or terminate the trust created by such deposit." These are the only statutory words pertinent to the facts here disclosed. According to the agreed statement of facts the deposit here sought to be reached was made " for the benefit of all the policy holders and creditors of the insurance company." See St. 1907, c. 576, § 85, G. L. c. 175, § 155.

The statute under which the deposit was made declares a legislative policy. The deposit was required in the first instance in order that the insurance company might be enabled to do business in other States. That is the statutory declaration of its design. Its manifest purpose was to afford assurance to policy holders and beneficiaries in other jurisdictions of the degree of monetary responsibility disclosed by the deposit of such an amount of securities with the chief fiscal officer of the Commonwealth. The deposit is in trust. It is a part of every insurance business to settle obligations as well as to attract new contracts of insurance. The trust declared by the statute cannot be said to have been performed until all obligations of the insurance company to policy holders and creditors have been either settled in full and its business closed up on that footing, or, if that cannot be done, until all its assets have been distributed fairly and according to law among its policy holders and creditors. The terms of the statutory trust do not in express words restrict the disposition of the deposit to the settlement of obligations due to policy holders. The agreed facts are that it was made " for the benefit of all the policy holders and creditors of the insurance company." This is not in conflict with the statute but is in aid of its design. It is in accordance with the general legislative policy declared in our statutes. See G. L. c. 175, § 155. The distinction and importance under our frame of government of the public officer who was required to hold the deposit as trustee well

may have been an additional guaranty of the standing of the insurance company.

The statute, St. 1907, c. 576, § 99, does not mean that the deposit is to be held in trust for the benefit of the policy holders and creditors in the several States, whose laws required such deposit as a prerequisite to the doing of business by the insurance company within their respective jurisdictions. It means simply that the deposit must be received by the Treasurer and Receiver General for the purpose of enabling the insurance company to comply with the laws of such other States. It would be most unusual for such deposit to be required for the exclusive or primary benefit of the policy holders and creditors of a single State. No statute of any State of such character is referred to in the record or has been called to our attention. The policy of this Commonwealth, both as to foreign and domestic insurance companies, is that such deposits must be " in exclusive trust for the benefit and security of all the company's policy holders and creditors in the United States." See G. L. c. 175, § 155.

This trust as thus described and established is valid. It is for the benefit of a large number of widely scattered beneficiaries. Under our Constitution and laws, it is entitled to every protection for the furtherance of its beneficent aim. It is the duty of courts to conserve and cause to be executed according to its foundation every trust of this nature. No power is vested in courts to terminate trusts such as this until their purpose has been accomplished. *Conant* v. *St. John*, 233 Mass. 547. *Forbes* v. *Snow*, 245 Mass. 85, 93, and cases there collected.

The Treasurer and Receiver General is ready to continue the execution of his trust according to its terms and under the direction of the court. No ground is revealed on this record warranting his removal as trustee and the substitution of the receiver in his stead.

There are now and have been for many years provisions in our statutes for the appointment of receivers of insurance companies. See now G. L. c. 175, §§ 6, 178, 179, 180. If it had been the purpose of the Legislature that securities, de-

posited in trust as are those here involved, should be turned over to a receiver for administration, it is probable that express provision to that end would be found in the statute. The absence of statutory words to that effect is strong indication that no such course of administration was intended. The terms of the trust and the public officer with whom the deposit is made indicate that the securities ordinarily should not be made subject to any charges of administration, such as expenses of a receivership. The bald cost of distribution alone commonly could be charged against it.

The conclusion follows that the securities ought to remain with the Treasurer and Receiver General and ought not to be ordered transferred to the receiver. Similar decisions have been reached in other jurisdictions, where statutes more or less resembling the one here under consideration have been construed. *Cooke* v. *Warner,* 56 Conn. 234. *Ruggles* v. *Chapman,* 59 N. Y. 163. *People* v. *Chapman,* 64 N. Y. 557. *Lancashire Ins. Co.* v. *Maxwell,* 131 N. Y. 286. *Vandiver* v. *Poe,* 119 Md. 348. *State* v. *Matthews,* 64 Ohio St. 419. Other decisions at first sight of a contrary appearance rest upon specific phraseology of different statutes. *Attorney General* v. *North American Life Ins. Co.* 80 N. Y. 152. *Smyth* v. *Munroe,* 84 N. Y. 354. *Phillips* v. *Perdue,* 111 Texas, 112.

The settlement of the affairs of an insurance company by a receiver appointed by the court imports an equitable distribution of its available assets among all those who, under the rules established by the court, prove themselves to be creditors and justly entitled to share in its property. The ascertainment of those creditors involves finding out who are policy holders and who are creditors on other kinds of claims and the classification of them so far as necessary and the determination of whatever preferences, if any, are required by the law. That must be done in any event. It would be an unnecessary duplication of labor and an unwarranted expense upon policy holders and creditors to require such an inquiry and determination both in the receivership proceedings and in the case at bar.

The agreed facts show that a justice of this court in 1918

and 1919 entered a decree establishing rules and orders for winding up the affairs of the insurance company. If those rules and orders have been faithfully and energetically followed and executed, it seems likely that the time must be ripe for the ascertainment of the policy holders and creditors entitled to share in the assets in the hands of the receiver and in the proceeds of the securities involved in the case at bar. It appears to us that in any event decrees ought to be entered in that case by January 1, 1925, of such nature as to afford information to the Treasurer and Receiver General whereby a distribution of the proceeds of the securities on deposit with him may be made in accordance with the principles herein declared.

The case is to stand continued until not later than the first of January, 1925, unless this time is further extended by a single justice upon good cause shown, in order to enable the entering of appropriate decrees in the receivership case, declaring those entitled to share in the assets of the insurance company as policy holders and creditors; copy of such decree when entered is to be filed in the case at bar; appropriate decrees then are to be entered authorizing and directing the Treasurer and Receiver General to convert into cash the securities deposited with him; and, after deducting his actual expenses, to distribute the proceeds among such policy holders and creditors in the proportions required by justice and equity, and for terminating the trust and discharging the Treasurer and Receiver General and the Commonwealth from further liability under the trust. Both the costs of the plaintiff, to be taxed as in an action at law, and the disbursements of the Attorney General in printing his brief are to be charged against the fund; details of the several decrees to be determined by the single justice.

*Ordered accordingly.*