AKERS MOTOR LINES, INC. *vs.* STATE TAX COMMISSION.

Suffolk.    March 5, April 20, 1962. — May 10, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Taxation,* Motor vehicle excise. *Motor Vehicle,* Registration. *Evidence,* Prima facie evidence, Documentary evidence. *Words,* "Imposes."

At a hearing by the Appellate Tax Board of an appeal from a refusal by the State Tax Commission to abate 1957 motor vehicle excises assessed under G. L. c. 60A, § 1, as amended, on trailers and semitrailers owned by a North Carolina corporation and registered in both North Carolina and Massachusetts, the board, on a record disclosing a complete absence of contradictory evidence, was not free to disbelieve documentary evidence of the existence of certain North Carolina statutes, of a regulation of the Massachusetts Registrar of Motor Vehicles, and of a written opinion or ruling of the North Carolina Department of Motor Vehicles. [363]

A "final" determination by the Commissioner of Corporations and Taxation under G. L. c. 60A, § 1, as amended, of the States which afford motor vehicle tax reciprocity to Massachusetts is subject to judicial review for errors of law. [363]

North Carolina Gen. St. (1953 Recompilation), c. 20, § 20–83, as in force in 1957, granting exemption from registration there of out-of-State vehicles only "to the same extent as like exemptions are granted residents" of North Carolina "under laws of another state," required from Massachusetts full reciprocity with respect to a particular category of vehicles used in a particular manner as a condition of relieving the same category of Massachusetts vehicles used in the same manner from North Carolina registration. [367]

In G. L. c. 90, § 3, as amended through St. 1953, c. 463, §§ 2, 3, the reciprocal exemption from registration in Massachusetts of certain motor vehicles of nonresidents operated here is, by virtue of the preceding words "except as otherwise provided in this section," subordinate to the explicit, unambiguous requirement that "A motor vehicle or trailer owned by a non-resident and used in direct connection with a place of business of such non-resident within this commonwealth shall be registered" here; and such requirement necessitated the registration here in 1957 of certain tractors and semitrailers used here in interstate commerce only and owned by a North Carolina corporation and registered in North Carolina. [367–368]

Administrative interpretation of a statute is immaterial except as an aid to judicial construction in appropriate circumstances. [368]

Where motor vehicles registered and customarily kept in North Carolina, owned by a North Carolina corporation having its principal place of business there and no principal place of business in Massachusetts, and used here only in interstate commerce, were required to be registered here in 1957 by G. L. c. 90, § 3, as amended through St. 1953, c. 463, §§ 2, 3, and were in fact registered here then, and by reason of such requirement North Carolina statutes then required comparable Massachusetts motor vehicles to be registered in North Carolina, and imposed registration fees higher than comparable Massachusetts registration fees, the North Carolina vehicles were not entitled to the reciprocal exemption from the motor vehicle excise provided by G. L. c. 60A, § 1, as amended through St. 1956, c. 328, § 1.   [360–362, 367–368]

APPEAL from a decision by the Appellate Tax Board.

*Samuel Hoar, Jr.* for the taxpayer.

*Edward J. McCormack, Jr.,* Attorney General, *& Herbert E. Tucker, Jr.,* Assistant Attorney General, for the State Tax Commission, submitted a brief.

CUTTER, J.   The appellant (Akers) is a North Carolina corporation with its principal place of business in Gastonia in that State.   It appealed on May 6, 1958, to the Appellate Tax Board (the board) from the refusal of the State Tax Commission to abate motor vehicle excises assessed for the year 1957 upon five tractors and forty-eight semitrailers used in interstate commerce and owned by Akers.   These tractors and semitrailers were registered in Massachusetts.   The excises have been paid.   The board rendered a decision for the commission.   It denied three requests for rulings of law made by Akers.   Akers appealed.

The question presented by the denial of Akers' requests for rulings[1] is whether in the circumstances, certain Massachusetts and North Carolina statutes grant reciprocal ex-

[1] These denied requests were, in substance, (No. 4) that in 1957, under the North Carolina motor vehicle laws, a Massachusetts corporation doing interstate business in North Carolina (in a manner similar to the interstate business done in Massachusetts by Akers) would not have been required to register in North Carolina its trucks and trailers customarily kept in Massachusetts or "to pay any registration fees or excise . . . or property taxes, or fees in lieu of or in addition to registration fees"; (No. 5) that, in 1957, North Carolina did not impose upon such Massachusetts vehicles any such tax or fee or any registration fee at a rate greater than that required for registration in Massachusetts; and (No. 6) that as a matter of law Akers was entitled to an abatement.   Akers does not argue that the tax imposed by c. 60A may not be applied to it constitutionally, so there is no occasion to consider constitutional questions discussed in the commission's brief.

emptions with respect to the registration and taxation of Akers' five motor vehicles and forty-eight semitrailers, mentioned above.  General Laws c. 60A, § 1 (as amended through St. 1956, c. 328, § 1), provides, in part, "Except as hereinafter provided, there shall be assessed . . . in each calendar year on every motor vehicle and trailer registered under chapter ninety, for the privilege of such registration, an excise measured by the value thereof."  Section 1 also provides for a reciprocal exemption from this excise with respect to "the registration . . . by a . . . corporation which does not have a principal place of business in this commonwealth, of any motor vehicle or trailer to be customarily kept in another state; provided, such motor vehicle or trailer is also registered in such other state during the period when registered in this commonwealth, and *if such other state* does not impose an excise, privilege or property tax or fee in lieu of or in addition to a registration fee, or *does not impose a registration fee at a rate greater than that required for registration in this commonwealth,* upon motor vehicles or trailers, as the case may be, customarily kept in this commonwealth and registered . . . by a . . . corporation having its principal place of business in this commonwealth"[2] (emphasis supplied).

In addition to the facts already stated, the following facts, alleged in Akers' petition, were admitted by the State Tax Commission.  Akers is an "interstate motor freight common carrier . . . with operating authority extending between points in Massachusetts . . . and points in Georgia."  It has no intrastate operating authority within Massachusetts.  The five tractors and forty-eight semi-trailers were registered in North Carolina during the period in 1957 when also registered in Massachusetts.  Proper applications for abatement of the excises were filed by Akers. The commission's answer reveals that the applications were denied by the commission, on the ground that the Commis-

---

[2] Chapter 60A, § 1, also provides that the "commissioner shall determine what states do not impose such additional excise, privilege or property tax or fee, or registration fee or fee in lieu of such levies and his determination shall be final."

sioner of Corporations and Taxation had determined that North Carolina was a State which did not fall within the language of the reciprocal exemption granted by G. L. c. 60A, § 1.

At the hearing before the board, it was agreed that the tractors and semitrailers were customarily kept in North Carolina and principally garaged there. The board took notice under its rules of § 20–83 of Part 6 of the motor vehicle laws of North Carolina. See N. C. Gen. St. (1953 Recompilation), c. 20. It was stipulated "that the registration fees of North Carolina are higher than the registration fees of . . . Massachusetts" (North Carolina, — tractors $246, semitrailers $102; Massachusetts, — tractors $150, semitrailers $15). At the hearing also there was introduced in evidence, subject to the exception of the commission, a certified copy of a regulation, promulgated on November 10, 1955, by the registrar of motor vehicles of the Commonwealth, determining that in certain States "motor vehicles and trailers duly registered under the laws and owned by residents of this [C]ommonwealth are granted [certain] privileges" and that, therefore, under G. L. c. 90, § 3 (as amended through St. 1953, c. 463, §§ 2, 3, see footnote 3, *infra*) motor vehicles or trailers owned by nonresidents and duly registered in those States are granted by Massachusetts similar privileges of operation without registration under c. 90. As to North Carolina, the relevant privileges granted by that State were said to be "Commercial vehicles: Interstate, unlimited; intrastate, must be registered."

It would have been desirable for the board to make findings and to prepare an opinion in a case which the presiding member recognized was likely to come to this court. It was not required to do so, however, for Akers did not request the board to make findings and a report within ten days after the decision. See G. L. c. 58A, § 13 (as amended through St. 1957, c. 522). Accordingly, we cannot ascertain with precision what facts, not established by the pleadings or admitted by the commission, the board found to be true. Nevertheless, we need not remand the case for proper find-

ings, as we might do under G. L. c. 30A, § 14 (8), inserted by St. 1954, c. 681, § 1. Enough has been established to permit decision of the case on the merits, for the board was not free to disbelieve (in the complete absence of contradictory evidence) documentary evidence of the existence of certain North Carolina statutes, of a regulation of the Massachusetts registrar of motor vehicles, and of a written opinion or ruling of the North Carolina Department of Motor Vehicles. See *Barrett* v. *Brooks Hosp. Inc.* 338 Mass. 754, 757–758. See also *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 139; *Commonwealth* v. *D'Avella,* 339 Mass. 642, 645; *Northeastern Malden Barrel Co. Inc.* v. *Binder,* 341 Mass. 710, 713–714; *Boxer* v. *Boston Symphony Orchestra, Inc.* 342 Mass. 537, 538.

1. Although the determination by the Commissioner of Corporations and Taxation (see footnote 2, *supra*) of the States which afford to Massachusetts motor vehicle tax reciprocity is said by c. 60A, § 1, to be "final," it is subject to review at least for errors of law. See *Commissioner of Corps. & Taxn.* v. *Chilton Club,* 318 Mass. 285, 287–288. The board properly adopted this view in its rulings.

2. So far as here pertinent, G. L. c. 90, § 3 (as amended through St. 1953, c. 463, §§ 2, 3), is set out in the margin.[3]

The North Carolina statutes, brought to our attention by Akers' brief, are § 20–88(b) of the motor vehicle laws

---

[3] Section 3 reads in part, "*except as otherwise provided in this section* . . . a motor vehicle or trailer owned by a non-resident who has complied with the [registration] laws . . . of the state . . . of registration, may be operated . . . [in] this commonwealth without registration . . . to the extent . . . that, as finally determined by the registrar, the state . . . of registration grants substantially similar privileges in the case of motor vehicles and trailers duly registered under the laws and owned by residents of this commonwealth [subject to provisos not here pertinent] . . . . *A motor vehicle or trailer owned by a non-resident and used in direct connection with a place of business of such non-resident within this commonwealth shall be registered in this commonwealth; provided, that a non-resident who uses motor vehicles or trailers both in direct connection with his place of business in this commonwealth and in connection with a place or places of business outside the commonwealth need not register in this commonwealth more than the number of his vehicles which equals the average number of his vehicles regularly used in connection with his place of business in this commonwealth.* For the purposes of such registration, the registrar may determine what vehicles or what proportion of vehicles owned by such non-resident are so used" (emphasis supplied). As to Massachusetts licenses of interstate common carriers of property see G. L. c. 159B, § 10 (as amended through St. 1954, c. 481).

(N. C. Gen. St. [1953 Recompilation] c. 20) which (as amended through St. 1955, c. 554, § 8) imposes fees according to a schedule "for the registration and licensing of trucks . . . and semi-trailers," and § 20–83, reading "Nonresidents of this State . . . will be exempt from the provisions . . . as to the registration of motor vehicles . . . to the same extent as like exemptions are granted residents of this State under laws of another state . . . . The [c]ommissioner shall determine what exemptions the nonresident vehicle operators of the several states . . . are entitled to under the provisions of this section, and . . . publish rules and regulations for making effective the provisions of this section . . . ." In connection with these assessments an inquiry about the applicable North Carolina statutes was presented under date of May 9, 1958, by tax counsel in behalf of the Massachusetts State Tax Commission to the North Carolina Department of Motor Vehicles. This inquiry stated essentially the facts of the present case. The North Carolina department, under date of May 13, 1958, replied, referring to § 20–83, as stated in the margin.[4] The exchange of correspondence was in evidence. The signer of the letter, Miss Foy Ingram, director of registration in the North Carolina department, testified in person before the board, and, in substance, confirmed what was said in the letter of May 13, 1958.

---

[4] The reply (after referring to § 20–83) reads in part, "You inquire what reciprocity would be extended to a Massachusetts corporation with its principal place of business in Massachusetts . . . in the business of interstate motor freight . . . operating . . . between . . . points in Massachusetts and points in Georgia and whose tractors and trailers are principally garaged in Massachusetts and registered . . . [in] Massachusetts. It has no intrastate operating authority in North Carolina but has terminals in North Carolina for . . . [interstate business].

"We have been of the belief that North Carolina and Massachusetts were fully reciprocal as to interstate operations, and have under the conditions set out in the preceding paragraph been recognizing Massachusetts plates for . . . interstate operated equipment. We have been requiring North Carolina registration only on . . . [pick up and delivery] vehicles based at the North Carolina terminals . . . . By registration we mean license plates, which is the only fee levied in North Carolina. We have no public service fees.

"From your letter it seems that Massachusetts *is not fully reciprocal on the same basis as North Carolina, and since the reciprocity to be extended by North Carolina is based on the privileges extended by other states to residents of this state, it might be that a formal agreement between our states would be in order. May we hear from you in this regard*" (emphasis supplied).

From the uncontradicted documentary evidence, it is established that, prior to the inquiry made on May 9, 1958, in behalf of the Massachusetts commission, as a matter of administrative practice, (a) North Carolina, and its department of motor vehicles in 1957 would not have required registration by a Massachusetts corporation of vehicles and trailers owned by it when operated within North Carolina only on an interstate basis similar to Akers' 1957 operations in Massachusetts, and (b) without such registration, no taxes or fees of any type would have been imposed in 1957 by North Carolina with respect to such vehicles and trailers. Akers, in effect, contends that these facts are sufficient to bring Akers' vehicles and trailers, although registered in Massachusetts, within the reciprocal exemption provisions of G. L. c. 60A, § 1, already quoted. The commission contends that exemptions from taxation are to be construed strictly and that Akers has the burden (see *Norwood* v. *Norwood Civic Assn.* 340 Mass. 518, 525) of showing that it is within the reciprocal exemption. See *Old Colony Trust Co.* v. *Commissioner of Corps. & Taxn.* 343 Mass. 613, 619–620. The scope of the reciprocal exemption contained in c. 60A, § 1, in these circumstances has not been decided, although there was some discussion of the exemption in *O'Brien* v. *State Tax Commn.* 339 Mass. 56, 64, 66–70. Cf. *Rummel* v. *Peters,* 314 Mass. 504, 514–516 (decided before certain statutory amendments in force in 1957).

Reciprocal exemptions, perhaps, may be more liberally interpreted than other tax exemptions. Their purpose is to permit persons from State A to receive tax exemptions in State B, in return for a similar exemption in State A granted to persons from State B. The effect of such exemptions is to reduce or eliminate double taxation. There are obvious difficulties inherent in applying such statutes. See Note, 43 Harv. L. Rev. 641. Accordingly, there is strong reason for avoiding any narrow or restricted interpretation of them which will prevent them from accomplishing their purpose (see *Sun Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 340 Mass. 235, 238) and from achieving fair

reciprocity.[5]   Nevertheless, a legislature in enacting such reciprocal provisions also intends that they shall not be applied unless reciprocity really exists.

We consider the reciprocal exemption found in G. L. c. 60A, § 1, as amended, in the light of the considerations already mentioned.   That exemption is available to owners of a motor vehicle owned by a foreign corporation (which has no principal place of business in Massachusetts), (a) if the vehicle is customarily kept in another State; (b) if it is registered there; and (c) if such other State does not "impose" another type of tax in lieu of or in addition to a registration, or does not "impose" a higher registration fee upon Massachusetts vehicles customarily kept in Massachusetts.[6]   Chapter 60A, § 1, thus refers us to the North Carolina statutes, especially § 20–83.   As has been stated above, it is agreed that, to the extent that in 1957 registration of Massachusetts vehicles (in a position analogous to those of Akers) in North Carolina was in fact required by the provisions of § 20–83, the North Carolina registration fees were higher than comparable Massachusetts fees.   Accordingly, if such Massachusetts vehicles would have been required by § 20–83 to register in North Carolina, the higher North Carolina registration fees would have been imposed on them, and Akers would not have been in a position to obtain the benefit of the reciprocal exemption under c. 60A, § 1, with respect to its vehicles then registered here.

[5] Certainly, if retaliatory legislation is to be construed strictly and is not to be applied in any case which does not plainly fall within the terms of the particular retaliatory statute (see *Commissioner of Corps. & Taxn.* v. *Aetna Life Ins. Co.* 328 Mass. 404, 410; see also 91 A. L. R. 795, 803) then reciprocal exemptions should not be construed so narrowly as to thwart their public purpose.

[6] The Massachusetts legislature can hardly have intended that motor vehicles from a State which requires no registration of, and imposes no taxes or registration fees whatsoever on, particular classes of Massachusetts motor vehicles operated within its borders should be any less within the reciprocal exemption of c. 60A, § 1, than such vehicles from a State which imposes a registration fee at a rate less, or no greater, than that imposed by Massachusetts.   Consequently, we assume that Akers would be within the reciprocal exemption of c. 60A, § 1, if the fair construction of § 20–83 of the North Carolina statute is that in no event in 1957 would a Massachusetts corporation, in a position analogous to that of Akers, have been obliged to register its comparable vehicles in North Carolina or to pay any tax there.

In 1957, § 20–83 granted exemption from North Carolina registration to out-of State vehicles only "to the same extent as like exemptions are granted residents" of North Carolina, "under laws of another state." The language of the statute is explicit. We interpret it as requiring from Massachusetts full reciprocity (with respect to a particular category of vehicles used in a particular manner) as a condition of relieving the same category of Massachusetts vehicles from North Carolina registration. To the full extent, however, that Massachusetts did not require 1957 registration of vehicles owned by North Carolina residents, § 20–83 in 1957 relieved residents of Massachusetts from any requirement of North Carolina registration. The present case thus depends on whether G. L. c. 90, § 3, as amended, did require 1957 registration in Massachusetts of the portion of Akers' fleet of vehicles which was in fact registered here.

Akers alleged in its petition that it registered the five line haul tractors and forty-eight semitrailers "upon the insistence of" the Massachusetts registrar of motor vehicles. The fact thus alleged constitutes a practical administrative construction and limitation by the registrar of Akers' rights to exemption from registration under c. 90, § 3. Although this construction seems inconsistent with the registrar's regulation of November 10, 1955 (that North Carolina interstate commercial vehicles had "unlimited" privileges of operation in Massachusetts), Akers has not shown that it took any action to review the registrar's "insistence" that it register its vehicles, under G. L. c. 90, § 28 (as amended through St. 1950, c. 536), or otherwise. It is not necessary, however, to decide whether Akers may now raise collaterally in this proceeding the correctness of the registrar's action. Even assuming that it may now do so, we think that the italicized words of G. L. c. 90, § 3 (see fn. 3, *supra*) did require 1957 Massachusetts registration of Akers' vehicles in fact so registered. The reciprocal exemption in the first part of § 3, by virtue of the words, "except as otherwise provided in this section," is made

subordinate to the explicit, unambiguous requirement of registration of these vehicles found in the italicized language (see fn. 3, *supra*) later in the section, inserted by St. 1953, c. 463, § 3.   See 1953 House Bills Nos. 1862, 2749.

Because we interpret § 20–83 of the North Carolina statute as requiring 1957 North Carolina registration of Massachusetts vehicles (comparable to those of Akers in fact registered here in 1957) if they were to operate in North Carolina, it is immaterial that the North Carolina administrative officials in 1957 believed[7] Massachusetts to be a fully reciprocal State.   We think that the matter of reciprocity under c. 60A, § 1, and under c. 90, § 3, and also under § 20–83, must be determined on the basis of the requirements contained in the relevant statutes of the States concerned.   We interpret the word "impose" in c. 60A, § 1, as referring to what is prescribed by the statutes of the State, the alleged reciprocity of which is being considered, when such statutes are interpreted in accordance with usual principles of statutory interpretation.   In the circumstances, except as administrative interpretations of such statutes may properly be considered as an aid to statutory construction, they are without significance.[8]

The board correctly denied Akers' requests for rulings (see fn. 1).   Akers has not established facts showing that its vehicles registered in Massachusetts in 1957 were entitled to the reciprocal exemption under c. 60A, § 1.

3.   The decision of the Appellate Tax Board is affirmed. The commission is to have costs of the appeal to this court.

*So ordered.*

---

[7] We cannot be sure, of course, what the North Carolina administrative officials would have done with respect to requiring registration of Massachusetts vehicles, if in 1957 they had possessed knowledge of the Massachusetts registrar's action in respect of Akers' vehicles.   The ruling dated May 13, 1958, of the North Carolina department (see fn. 4, *supra*), indicated a very proper doubt whether Massachusetts was then really in matters of registration "fully reciprocal" with North Carolina.   This doubt unquestionably was caused by the Massachusetts registrar's action which had been brought to the attention of the North Carolina department by the State Tax Commission's inquiry.

[8] Different questions, of course, may arise where the statutes of this Commonwealth or those of other States purport to authorize administrative arrangements or quasi-treaties about reciprocal arrangements.   No such question is before us.