COMMISSIONER OF INSURANCE *vs.* EQUITY GENERAL
INSURANCE COMPANY.
(PETITION OF TRAILWAYS OF NEW ENGLAND, INC.)

Suffolk. May 8, 1963. — June 6, 1963.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Insurance,* Liquidation of company, Foreign company, Deposit by company. *Receiver. Words,* "Special deposit."

Nothing in the Uniform Insurers Liquidation Act suggests that special deposits made by insurers with a State for the benefit of particular classes of policyholders and claimants shall not be applied in accordance with the statute of that State creating special deposits and providing for the enforcement of claims against them. [236–237]

The character of a deposit with the Commonwealth under G. L. c. 175, § 159, by a Florida insurance company was determined by the Florida

statutes, in force when the deposit was made and the company admitted to do business in Massachusetts, respecting a deposit with the State of Florida by a Massachusetts insurance company admitted to do the same type of business in Florida; and, since Fla. Sts. (1955) §§ 631.01–631.09 made such a deposit a "special deposit" for the benefit of Florida policyholders of a Massachusetts company, the deposit made by the Florida company with the Commonwealth was a "special deposit" "for the security or benefit of a limited class . . . of persons" within G. L. c. 175, § 180A, against which Massachusetts policyholders of the Florida company were entitled under § 180J to prove priority claims in an ancillary receivership of the Florida company in Massachusetts. [237–238, 240–241]

PETITION filed in a receivership in the Supreme Judicial Court for the county of Suffolk on November 21, 1962.

The case was reserved and reported by *Cutter, J.*

*Edward F. Hennessey* for Trailways of New England, Inc.

*Edward T. Martin,* Assistant Attorney General, for the Commissioner of Insurance.

CUTTER, J. Trailways of New England, Inc. (Trailways) filed this petition in the ancillary receivership of the insurance company (Equity), a Florida corporation, for an order that the commissioner, as ancillary receiver, be directed "to retain within the Commonwealth the $20,000 deposit of Equity . . . originally placed with the Treasurer and Receiver-General under the 'retaliatory laws', so-called [G. L. (Ter. Ed.) c. 175, § 159], and to pay from . . . [that] deposit only such claims as have been brought by citizens or residents of . . . Massachusetts for matters arising within . . . Massachusetts." A single justice reserved the case without decision for the determination of the full court upon the pleadings and stipulations of "all . . . material facts."

Trailways, a Massachusetts corporation, held a public liability automobile policy issued by Equity which was in effect from November 1, 1959, to September 1, 1960. Since then Trailways has paid and become obligated to pay various claims of injured persons and has pending against it several similar claims, all arising out of injuries covered by Equity's policy. Equity wrote multiple insurance lines including fire insurance. It qualified to do business in

Massachusetts in 1957 and made its deposit of $20,000 in accordance with c. 175, § 159.[1] Florida Sts. (1955) §§ 631.01–631.09, then required each fire insurance company before being admitted to do business in Florida (§ 631.01) to make a deposit (§ 631.06) with the Florida insurance commissioner in bonds or cash of $20,000 or to file a surety bond in the same amount. Section 631.09 provided that "[u]pon the bonds so deposited . . . the holders of all policies of . . . [the] insurer who are citizens or residents of this state at such time, or who hold policies issued upon property in this state, shall have a lien to the amount due them, respectively . . . in consequence of such policies, for losses, return premiums or equitable values and shall be entitled to be paid ratably out of the proceeds of said bonds (if such proceeds be not sufficient to pay all of said policyholders)." See Fla. Sts. (1961) § 624.0210, as amended by Fla. Laws of 1961, c. 61–166, § 1 (under which the deposit would have been at least $50,000 "for the protection of the insurer's policyholders or its policyholders and creditors who are citizens or residents of this state [Florida] or who hold policies issued upon property in this state"). See also fn. 7, *infra.*

On September 23, 1960, the Florida insurance commissioner was appointed domiciliary receiver of Equity. On October 28, 1960, the then Massachusetts Commissioner of Insurance was appointed Equity's ancillary receiver here. Within the time prescribed in the ancillary proceedings Trailways filed with the ancillary receiver proofs of claim, "directed solely" against the $20,000 deposit, claiming that it was the owner of "special deposit claims" within the meaning of the statutory provisions applicable to the liquidation of domestic and foreign insurers, G. L. c. 175,

---

[1] Section 159 reads, "If by the laws of any other state any taxes, fines, penalties, licenses, fees, deposits or other obligations or prohibitions, additional to or in excess of those imposed by the laws of this commonwealth upon foreign companies . . . are imposed on domestic companies . . . doing business in such state, like obligations and prohibitions shall be imposed upon all companies of such state . . . doing business in this commonwealth so long as such laws remain in force."

§§ 180A–180L, inserted by St. 1939, c. 472, § 3, which were in major part based upon the Uniform Insurers Liquidation Act, in force with some variations in Massachusetts[2] and in Florida. See Fla. Laws of 1959, c. 205, now Fla. Sts. (1961) c. 631.211. The most pertinent provisions of c. 175, §§ 180A–180L, are summarized in the margin.[3]

No written objections to Trailways' claims have been filed with the ancillary receiver and no decision has been rendered on them. Trailways, however, has been informed by attorneys for the ancillary receiver that all proofs of claim[4] are being forwarded to the domiciliary (Florida) receiver of Equity and that leave of this court will be sought "for permission to forward to the Florida [r]eceiver the . . . deposit of . . . $20,000 . . . after deducting . . . various expenses . . . [of] the [a]ncillary [r]eceiver."

1. Although the various public and private groups which considered the draft uniform statute (see fn. 2, *supra*) may have viewed with some disfavor special deposits for the

[2] See 1939 House Doc. No. 45; 1939 House Bills Nos. 57, 2327, 2581; 1939 Senate Bill No. 597; 1939 House Journal, pp. 1901–1902. See also Handbook, Natl. Conf. of Commrs. Unif. State Laws, 1936, pp. 257–260; 1937, pp. 141–142, 323–329; 1938, pp. 369–381; 1939, pp. 77, 141, 229–239; Proc. Natl. Conv. Ins. Commrs. 1933, pp. 99–107, 114–115; 1935, pp. 96–98; 1936, pp. 29–32, 147; 1937, pp. 96, 217–218; 1939, p. 25; Am. Bar Assn. Rep. 1936, p. 887; 1939, pp. 111, 468; Couch, Insurance 2d, § 22.93; Annotation, 46 A. L. R. 2d 1185.

[3] Under § 180A the term "general assets" includes assets "held in trust and assets held on deposit for the security or benefit of *all policyholders, or all policyholders and creditors in the United States,*" and the term "special deposit claim" means "any claim secured by a deposit of a fund, property or bond, which deposit has been made pursuant to law for the security or benefit of *a limited class* or classes of persons and does not include any general assets" (emphasis supplied). The domiciliary receiver of a foreign company from a reciprocal State is by § 180E given title to certain Massachusetts assets, but the Commissioner of Insurance, as ancillary receiver, is directed to "liquidate from their respective securities such special deposit claims and secured claims as are . . . allowed in the ancillary proceedings . . . [to] pay from the assets . . . the necessary costs and expenses . . . and . . . [to] transfer all remaining assets to the domiciliary receiver."

[4] Under c. 175, § 180I, Massachusetts claimants against a foreign insurer may file claims either with the domiciliary or the ancillary receiver. Section 180J provides: "The owners of special deposit claims . . . shall be given priority against their several special deposits in accordance with the laws governing . . . such deposits. If there be a deficiency in any such deposit . . . the claimants may share in the general assets, but such sharing shall be deferred until general creditors, and also claimants against other special deposits who have received smaller percentages from their respective special deposits, have been paid percentages of their claims equal to the percentage paid from such special deposit."

benefit of particular classes of policyholders and claimants, we find nothing in the statute as enacted to suggest that special deposits are not to be applied in accordance with the statutes under which they were created. Sections 180A, 180E, 180I, and 180J of the Massachusetts act provide expressly for the enforcement of special deposit claims. See fns. 3 and 4, *supra.* Accordingly, if Equity made what was really a special deposit for the benefit of Massachusetts policyholders, then Trailways may prove claims to be satisfied from that deposit ratably with other similar claims in accordance with §§ 180E and 180J.[5]

2.   General Laws c. 175, § 159, ''simply compels the imposition upon a foreign insurance company . . . of 'obligations and prohibitions' of like kind and to the same extent as those imposed in the State of the company's origin upon Massachusetts companies doing business there.'' See *Fireman's Fund Ins. Co. v. Commissioner of Corps. & Taxn.* 325 Mass. 386, 388–389. ''As a general rule retaliatory statutes are strictly construed.'' See *Commissioner of Corps. & Taxn. v. Aetna Life Ins. Co.* 328 Mass. 404, 410 (which held that, if the failure of another State to furnish an appellate remedy to Massachusetts insurance companies doing business there came within § 159 at all, then § 159 would require denial of a similar remedy in Massachusetts to insurance companies from that State only so long as the denial in that State remained in force). See also *Akers Motor Lines, Inc. v. State Tax Commn.* 344 Mass. 359, 365–368 (which discusses the somewhat analogous problem of reciprocal tax exemptions). Beyond the statements quoted above, there has been little pertinent interpretation of § 159.

---

[5] In the few decided cases under the uniform act, local policyholders have been permitted to enforce in ancillary receiverships claims against special statutory deposits made by foreign insurance companies for their benefit. See *Bohlinger* v. *Higginbotham,* 70 So. 2d 911, 915 (Fla.); *Collins* v. *Dacus,* 211 Ga. 779, 781–782. See also *State ex rel. Bohlinger* v. *Annat,* 123 N. E. 2d 71, 75–78 (Ohio, Ct. of C. P.). The general purpose of the act is referred to in *Ace Grain Co.* v. *Rhode Island Ins. Co.* 107 F. Supp. 80, 82 (S. D. N. Y.), aff'd. per curiam, 199 F. 2d 758 (2d Cir.). No questions about special deposit claims were discussed or decided in *Commissioner of Ins.* v. *Massachusetts Acc. Co.* 314 Mass. 558, *S. C.* 318 Mass. 238.

We assume, as one text writer has suggested, that the "ultimate object [of a retaliatory or reciprocal statute] is not to punish foreign corporations . . . or match . . . the foreign state in placing [burdens] upon corporations . . . but to induce . . . [a] foreign state to show the same consideration to corporations of the enacting state doing business therein as is shown to corporations of such foreign state doing business in the enacting state." Couch, Insurance 2d, § 21.92. See *Pacific Mut. Life Ins. Co.* v. *Lowe,* 354 Ill. 398, 405–406. To accomplish this objective, a statute like c. 175, § 159, requires Massachusetts courts and administrative authorities (1) to look at the statute law of the other State concerned and (2) to subject corporations from that State to the same requirements (interpreting the relevant statutes reasonably) which a Massachusetts corporation doing business there would be obliged to bear under the statutes of that State. With respect to deposits, the language of § 159 in terms has expressed this general policy at least since St. 1854, c. 453, § 34, through various statutory revisions which need not be quoted.[6] We think that the character and application of Equity's deposit under § 159 are to be determined by Florida's statutory requirements (applicable to Massachusetts insurance companies) which gave rise to Equity's deposit here. This means that the deposit will have the same characteristics as would the deposit of a Massachusetts fire insurance company, writing multiple lines of insurance, then made under Fla. Sts. (1955) §§ 631.01–631.09.[7] The present statute (Fla. Sts. [1961] § 624.0210, as amended by Fla. Laws of 1961, c. 61–

---

[6] It is argued that the language of Pub. Sts. (1882) c. 119, § 216 (which appears to have been a predecessor of G. L. c. 175, § 185, as most recently amended by St. 1943, c. 238, § 2; see St. 1887, c. 214, § 94), indicates that deposits made under Pub. Sts. (1882) c. 119, § 215 (a predecessor of c. 175, § 159; see St. 1887, c. 214, § 85), were special deposits for the benefit of Massachusetts policyholders. The subsequent statutory revisions which have resulted in the present form of c. 175, § 185, lead us to give this contention no weight.

[7] For a period, between July 1, 1957, and October 1, 1961, the Florida statute was changed in form, so that a deposit made in Florida under the statute during that period may have been for the benefit of policyholders generally (see Fla. Laws of 1957, c. 57–100, § 5; Fla. Sts. [1959] § 624.0210).

166, §§ 1, 3) appears to be much the same in substance as Fla. Sts. (1955) § 631.09.

The Florida courts have treated a deposit there by a foreign insurance company, under the Florida statutes already mentioned and their predecessors, as a deposit for the benefit of all or specified Florida policyholders, and thus within (see fn. 3, *supra*) the term "special deposit." See *Kelly* v. *Knott,* 120 Fla. 580, 589–592, revd. (on the question of the priority of Federal claims against the fund) sub nom. *United States* v. *Knott,* 298 U. S. 544 (where at pp. 548–549, the Florida construction of the statute is discussed), *S. C.* 127 Fla. 241. In *Bohlinger* v. *Higginbotham,* 70 So. 2d 911, 915 (Fla.), it appears to have been assumed that the security of the Florida deposit "is given to all Florida policy holders."[8] Various cases assume that such deposits under an Ohio statute are for the benefit of the residents of the State where the deposit is made. See *Re Application concerning Southern Surety Co.* 282 N. Y. 54, 60–61; *Indemnity Ins. Co. of No. Am.* v. *Stowell,* 172 Ohio St. 167, 173; *State ex rel. Bohlinger* v. *Annat,* 123 N. E. 2d 71, 75 (Ohio C. P.). Cf. *Langdeau* v. *Narragansett Ins. Co.* R. I. ,  —  ,[9] dealing with a somewhat different type of statute construed to permit a general deposit by a domiciliary company for the benefit of all policyholders.

In *McMurray* v. *Commonwealth,* 249 Mass. 574, this court considered the nature of a deposit made pursuant to St. 1907, c. 576, § 99 (now G. L. c. 175, § 185, as amended), which was stipulated (p. 581) to have been made with the Treasurer and Receiver General, in order to comply with the laws of various other States, "for the benefit of all the policy holders and creditors of . . . [an] insurance company," organized in Massachusetts, and then in receivership. After referring to the stipulation, the opinion said (p. 582), "The statute . . . does not mean that the deposit

---

[8] Opinions of the Attorney General of Florida are to the same effect. Opinion (No. 042–351) July 13, 1942; Opinion (No. 062–24) Jan. 30, 1962. Cf. Opinion (No. 057–287) Sept. 17, 1957, relating to the situation under Fla. Laws of 1957, c. 57–100, § 5, effective July 1, 1957. See fn. 7, *supra.*

[9] 179 A. 2d 110, 112–113.

is to be held in trust for the benefit of the policy holders and creditors in the several States, whose laws required such deposit . . . . It means simply that the deposit must be received by the [State] Treasurer . . . for the purpose of enabling the insurance company to comply with the laws of such other States. It would be most unusual for such deposit to be required for the exclusive or primary benefit of the policy holders and creditors of a single State. No statute of any State of such character is referred to in the record or has been called to our attention. The policy of this Commonwealth, both as to foreign and domestic insurance companies, is that such deposits must be. 'in exclusive trust for the benefit and security of all the company's policy holders and creditors in the United States.' See G. L. c. 175, § 155.'"[10]   We think that the *McMurray* case, because of the stipulation, is wholly distinguishable. Also, it deals with a statute permitting a domiciliary company to make a deposit in Massachusetts to satisfy deposit requirements of other States which may be so satisfied. It does not appear that counsel in the *McMurray* case brought to the court's attention any particular statutes of other States similar to the Florida statutes here discussed.

In the light of the authorities already cited, we conclude that Equity's deposit in Massachusetts was a special deposit for the benefit of Massachusetts policyholders and creditors because a similar deposit in Florida by a comparable Massachusetts company then would have been a special deposit for Florida policyholders and creditors under the pertinent Florida statutes in force when the deposit was made on October 26, 1956, and on April 30, 1957, when Equity was admitted to do business in Massachusetts. That, for a period between July 1, 1957, and October 1, 1961, a similar deposit in Florida by a Massachusetts com-

---

[10] The reference to c. 175, § 155, is to a section which has no application in the present case and which was not directly applicable in the *McMurray* case. Section 155 does not apply to insurance companies formed in Massachusetts or in any other State of the United States. That section relates only to alien companies ''formed under the laws of any government or state *other than* the United States or one of the United States'' (emphasis supplied).

pany might have been a general deposit for the benefit of all policyholders (and not merely for those in Florida) seems to us immaterial. The terms of the deposit, established when it was made, were never varied by any effort by Equity or any other person to modify them during the brief period when the Florida law may have been different. There is no occasion to consider whether such an effort could have been successful.

3. In view of what has been said, Trailways, and other Massachusetts policyholders of Equity, are entitled to prove special deposit claims under c. 175, § 180J, in the ancillary receivership. See also § 180I. The deposit (see fn. 3, *supra*) secured potential claims "for the security or benefit of a limited class . . . of persons."

4. An order is to be entered directing that the Commissioner of Insurance, as ancillary receiver, take no action to remove Equity's deposit from the custody of the Treasurer and Receiver General, pursuant to G. L. c. 175, §§ 180E and 185, until all special-deposit claims seasonably presented have been adjudicated finally in the ancillary receivership. When this has been accomplished, after appropriate petition in the ancillary proceedings, an order may be entered applying the special deposit in or toward satisfaction of the special-deposit claims duly allowed and the allowable claims for expenses of the ancillary receivership. Trailways at that time is to have costs to be paid (ratably with other expenses) from the $20,000 deposit fund as an expense of the ancillary receivership.

*So ordered.*